IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMOS and DEBBIE HOSTETLER, ) | |
| RITA CHAIREZ, BECKY NULL, and ) | |
| MARIA TOVAR, on behalf of themselves ) | |
| and all others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 3:15-cv-00226-JD-CAN |
| ) | |
| JOHNSON CONTROLS, INC. and ) | |
| TOCON HOLDINGS, LLC, ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFFS' MOTION TO REMAND

Plaintiffs, on behalf of themselves and a class of similarly situated individuals, and pursuant to 28 U.S.C. §1447(c), request that this Court remand this case to the Circuit Court of Elkhart County, Indiana.

### I.   INTRODUCTION

On June 3, 2014, Plaintiffs served their Complaint and Summons on Defendant Johnson Controls, Inc. ("JCI"). The Complaint requested not only money damages but also an injunction requiring JCI to clean up contamination in Plaintiffs' neighborhood to nondetectable levels. Quoting Plaintiffs' Complaint, JCI admits in its Notice of Removal that its cost to comply with the requested injunction would "certainly" exceed the $10 million it has already spent on remediation efforts at the site. JCI has been aware of that fact—and hence that the $5 million jurisdictional minimum under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d), has been met—since the day it received the Complaint. It certainly needed no information from

Plaintiffs beyond the Complaint to reach that awareness, and does not claim it did.  Therefore, the 30-day deadline for JCI to seek removal expired nearly a year ago.  Because JCI's remand was untimely, this case should be remanded to state court.

As an independent ground for remand, JCI waived any right it might have had to remove this case.  JCI did not simply wait a year to file its Notice of Removal.  It actively litigated the case in state court, filing multiple motions, including an unsuccessful motion to dismiss all of Plaintiffs' claims, initiating extensive discovery, and delaying class certification proceedings.  Only after realizing it was not faring well in state court did JCI decide to try its luck in this forum.  Numerous courts have recognized that such conduct can effect a waiver of the right to seek removal.  For this additional reason, the Court should remand this action to state court.[1]

In addition, because the clearly established law demonstrated that JCI's removal was untimely, the Court should award "just costs," including attorney fees, under 28 U.S.C. § 1447(c).

---

[1] 28 U.S.C. §1332(d)(4)(A), CAFA's "Local Controversy Exception," provides that a district court "shall decline to exercise jurisdiction" over certain types of class actions.  JCI maintains in its Notice of Removal that that exception does not apply here, *i.e.*, does not deprive this Court of subject matter jurisdiction.  JCI also maintains that even if the Local Controversy Exception applies, it has a separate statutory right to remove this action based on complete diversity.  In that regard JCI contends that defendant TOCON Holdings, LLC, an Indiana citizen, was fraudulently joined, and thus should be disregarded for purposes of determining the parties' diversity of citizenship.

While the untimeliness of JCI's removal and its waiver of the right to seek removal are each dispositive and require remand of this action, the incorrectness of JCI's contentions concerning CAFA's Local Controversy Exception and fraudulent joinder provides additional grounds for remand.  Plaintiffs intend to file a second motion to remand on these grounds on or before July 10, 2015.  *See* 28 U.S.C. §1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after filing of the notice of removal under section 1446(a).").  JCI and Plaintiffs have agreed to mutual extensions of 15 days on the remand briefing; however, because untimeliness is a procedural defect subject to the 30-day rule under § 1447(c), Plaintiffs are filing the instant motion today to avoid any question concerning this Court's authority to issue a remand on this basis.

## II.  ARGUMENT

A.  **JCI's Removal Was Untimely.**

The general removal statute includes two different 30-day time limits for removal.  The first applies to cases that are removable based on the initial pleading.  In such a case, the notice of removal "shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief. . . ."  28 U.S.C. §1446(b)(1).  The second applies to cases in which the right to removal cannot be determined from the initial pleading.  As provided by §1446(b)(3):

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

As the Seventh Circuit has noted, "It's clear that the 30-day removal clock is triggered *only* by the defendant's receipt of a pleading or other litigation paper facially revealing that the grounds for removal are present."  *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 823-24 (7th Cir. 2013) (emphasis in original).

JCI was served with Plaintiffs' Complaint and Summons on June 3, 2014.  (Notice of Removal, Docket Entry ("DE") 1 at ¶ 14.)  As JCI acknowledges, the Complaint seeks both money damages and an injunction ordering it "to remove the Contamination, including all related vapors, that emanated from the Plant and now exists on the Plaintiffs' properties to non-detect levels."  (*Id.* ¶¶ 19, 39.)[2]  The Complaint even included a plume map, prepared by JCI's own

---

[2] Specifically, the "Prayer For Relief" in the Complaint requested that the state court: " . . . 4. Order the Defendants to remove the Contamination, including all related vapors, that emanated from the Plant and now exists on the Plaintiffs' properties to non-detect levels[.]"  (DE 4-1 at 28).

3

consultant, depicting the geographic scope of contamination requiring remediation.  (DE 4-1 at Exhibit 2.)

Despite the fact that JCI's Notice of Removal was filed almost a year after it received the Complaint, JCI maintains its removal was timely.  According to JCI, because the Complaint does not specify the amount of money damages Plaintiffs seek, it could not ascertain from the Complaint that CAFA's $5 million amount-in-controversy requirement was met.  Thus, it says, neither of the two 30-day time limits for removal has begun even to this day:

> Neither the Complaint nor any subsequent paper given to JCI by Plaintiffs has specifically disclosed the amount of money damages at stake.  The Complaint itself was notably silent on the issue.  Thus, the clock under §1446(b) has not yet begun to run.

(DE 1 at ¶ 39.)   JCI adds that its decision to seek removal now was prompted by recent depositions in which it supposedly learned for the first time "that some of the personal injuries allegedly suffered by the named class members are significant, and damages for those injuries, if proven, could meet the CAFA minimum by themselves."  (*Id.* at ¶ 16.)

It is well-settled in the Seventh Circuit that a defendant's cost to comply with a requested injunction can satisfy the amount-in-controversy requirement for federal diversity jurisdiction. As was said in *Macken ex rel. Macken v. Jensen*, 333 F.3d 797 (7th Cir. 2003):

> In a suit for injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L.Ed.2d 383 (1977).  And, at least in this circuit, the object may be valued from either perspective—what the plaintiff stands to gain, or what it would cost the defendant to meet plaintiff's demand.  *See In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609-10 (7th Cir. 1997); *Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 979, 983 (7th Cir. 2002).

*Id.* at 799-800.  See also *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002) ("It seems to us beyond absurd to allow a defendant to remove if the plaintiff is seeking damages

4

of $75,000.01, but not if the plaintiff is seeking an injunction directing the defendant to tear down, as a nuisance, a $10 million building that the defendant owns."). JCI agrees, and even cites to the same authority. (DE 1 at ¶ 19.) Courts within the Seventh Circuit have applied this rule in cases removed under CAFA. *See, e.g., White v. Playphone, Inc.*, 2009 WL 499103, at *3 (W.D. Wis. Feb. 27, 2009).

Notwithstanding JCI's professed inability to discern from the Complaint whether CAFA's jurisdictional minimum is met, it readily admits that its cost to provide the injunctive relief called for by the Complaint would certainly exceed $5 million:

> 19. . . . Specifically, Plaintiffs are requesting a court order that JCI clean up and remediate all of Plaintiffs' properties (including soil, groundwater, and indoor air) to levels at which TCE and related contaminants are not detectable. (*See* Ex. A, Compl., Prayer For Relief, ¶4.) Plaintiffs essentially allege that the multi-million-dollar remediation JCI has already performed to date—which involves cleaning up contaminants to minimum threshold levels permitted by the Indiana Department of Environmental Management and the Environmental Protection Agency—is insufficient, and that a more rigorous and more financially onerous cleanup is necessary.
>
> 20. JCI has already spent more than $10 million on remediation efforts, which remain ongoing. As a result, an injunction ordering the additional and far more rigorous cleanup that Plaintiffs now seek would certainly exceed $5 million.

(DE 1 at ¶¶ 19, 20; footnote omitted.)

It is JCI's burden to show by a preponderance of the evidence that its removal was timely. *See Clemons v. Ferolite, Vultaggio & Sons*, 2004 WL 442602, at *2 (N.D. Ill. Feb. 2, 2004) ("Because Hornell is the party seeking to preserve removal, it bears the burden of establishing, by a preponderance of the evidence, that it complied with the requirements of the removal statute."); *see also Speedy v. 3M Company*, 2015 WL 2265410, at *3 (S.D. Ill. May 12, 2015) (granting plaintiff's motion to remand where defendant failed to prove its notice of removal was timely); *Countrywide Home Loans Servicing, L.P. v. Dietrich*, 2009 WL 3517691,

5

at *1 (E.D. Wis. Oct. 27, 2009) (holding that defendant "failed to meet her burden of establishing that her notice of removal was timely"). It is therefore JCI's burden to show that its conceded awareness that the cost of the requested injunctive relief will exceed CAFA's jurisdictional minimum comes from facts it learned after it received the Complaint—indeed, from facts it learned no more than 30 days before its Notice of Removal was filed. It has cited no such evidence. That alone dooms its removal as untimely. *See, e.g., Clemons*, 2004 WL 442602, at *3 (holding removal untimely where the defendant "wholly fails to explain why it could not have ascertained these costs [of complying with a requested injunction] within thirty days of being served with the complaint").

JCI has admitted that the cost to comply with the injunction requested in Plaintiffs' Complaint would exceed $5 million. Once a defendant has received a complaint that seeks an injunction, there is nothing more it needs from the plaintiff for it to be able to determine how much it will cost to comply. That information will be in the defendant's possession, not the plaintiff's. In this case, JCI and its many consultants have been investigating the contamination since at least 1992. At the least, the information will be obtainable from sources within the defendant's control rather than that of the plaintiff. If courts were to hold that the 30-day removal clock did not start until the defendant, acting at whatever pace it wished, marshalled whatever information it needed to determine whether that cost exceeded the jurisdictional minimum, it would defeat the twofold purpose for the deliberately short statutory time limit for removal:

> to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.

6

*Walker*, 727 F.3d at 823 (quoting *Wilson v. Intercollegiate (Big Ten) Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982)); *see also Fields v. Jay Henges Enterprises, Inc.*, 2006 WL 1875457, at *3 (S.D. Ill. June 30, 2006) ("The 'policy and purpose of Congress [is] to effect removals as early as possible and avoid unnecessary delay.' Correspondingly, courts should not encourage parties to 'hold [ ] back' their 'federal cards.' 'If a [defendant] has good grounds to remove a case to federal court, it cannot experiment in state court before seeking removal.'") (citations omitted; brackets in original).

The potential abuse by defendants is even greater in cases to which CAFA applies. CAFA does not contain the one-year time limit for removal otherwise applicable to diversity cases. *See* 28 U.S.C. § 1453(b). Therefore, a defendant with internal knowledge of the injunction cost could litigate for years in state court, and if not faring well, could pull the removal parachute under an argument that it just determined (again, internally) that the cost of the injunction would exceed $5 million.

JCI has tried to obtain precisely the sort of "undeserved tactical advantage," and has caused precisely the "delay and waste of resources," that the removal statute was intended to prevent by actively litigating in state court for just shy of one year. On August 25, 2014, JCI moved to dismiss Plaintiffs' entire Complaint. (*See* DE 11 at p. 5.) JCI also asserted a counterclaim against co-Defendant TOCON Holdings, LLC. (DE 8 at pp. 4-7.) JCI appeared in court on December 3, 2014 and argued that all of Plaintiffs' claims should be dismissed. (*See* DE 11 at p. 6.) After the state court denied JCI's motion to dismiss (DE 1-12) and set Plaintiffs' motion for class certification for a hearing to take place on April 24, 2015, JCI objected and moved to stay all briefing on class certification and to delay any hearing on Plaintiffs' motion for at least seven months so that it could conduct class-wide discovery. (*See* DE 11 at p. 7.) The

7

state court held a hearing on JCI's motion to stay briefing on March 6, 2013. (*See id.* at p. 8.) The state court denied JCI's motion and set the class certification hearing for June 26, 2015. (*See id.*) JCI then served 97 interrogatories and 127 requests for production of documents. JCI filed a motion to compel and argued it to a Special Master. (*See id.*) JCI also deposed Plaintiffs' expert and all five of Plaintiffs' class representatives. Plaintiffs then requested a scheduling order to set deadlines for exchanging witness and exhibit lists in preparation for the class certification hearing. (*See id.* at p. 9.) The state court set Plaintiffs' request for a scheduling order for hearing on May 29, 2015. (*Id.*) The night before the scheduled hearing, without providing any prior notice to the Plaintiffs or the state court, JCI filed its Notice of Removal. (DE 1.)

JCI actively litigated this case in state court for 359 days, lost its motion to dismiss, deposed all five class representatives and Plaintiffs' expert, and was just four weeks away from a class certification hearing—JCI never once in those 359 days indicated to Plaintiffs or the state court its intention to remove this case. To prevent this type of state court "experimenting," courts hold that the 30-day clock under § 1446(b) commences when the complaint is served if the jurisdictional minimum is satisfied by the likely cost of complying with a requested injunction, and the information needed to determine that cost is within the defendant's control. For example, *Clemons* involved a false-advertising claim brought as a class action against the seller of bottled iced tea. 2004 WL 442602, at *1. The plaintiff's complaint sought money damages from the defendant, Hornell, as well as an injunction prohibiting it from making certain claims about the supposed health benefits of its product. *Id.* More than 30 days after Hornell received the complaint, it removed the case to federal court. *Id.* Hornell maintained it did not become aware that the cost of complying with the injunction would likely exceed the

8

jurisdictional minimum until the plaintiff filed his motion for a preliminary injunction. *Id.* at *2. The court held, however, that because the information Hornell needed to determine the cost of complying with the injunction was within its possession, the 30-day time limit for removal started when the complaint was served, thus making the removal untimely:

> The critical issue here is whether Hornell could have ascertained that the case was removable based on the complaint alone. The complaint seeks an injunction prohibiting Hornell "from claiming in labeling, advertisement or any other form" that the drinks offer the claimed health benefits. Therefore, Hornell's assertion that it could not ascertain the costs of complying with such an injunction is without merit; it could easily envision that it would *at least* be required to re-label its drinks if the requested relief were to be granted. It was not necessary for the complaint to include any other "facts" regarding this request; the information that Hornell could use to determine the costs of complying with an injunction to re-label its drinks was solely within Hornell's possession.

*Clemons*, 2004 WL 442602, at *3 (emphasis in original).

Here JCI's concession that the cost of complying with the requested injunction "would certainly exceed $5 million" (DE 1 at ¶ 20) is not even purportedly based on information JCI learned after it received Plaintiffs' Complaint. To the contrary, it is based on JCI's own comparison of the $10 million it has already spent on cleanup with its own estimation of the likely cost of the "more rigorous and more financially onerous cleanup" (*id.* at ¶ 19) requested in the Complaint. As in *Clemons*, that information is in JCI's possession. It did not come—and could not possibly have come—from Plaintiffs.

JCI relies on *Walker* to support its timeliness argument solely with respect to Plaintiffs' claims for monetary damages. (*See* DE 1 at ¶¶ 38, 40.) Unquestionably, in evaluating requests for monetary damages under § 1446(b)(3), the pleadings or other papers must "specifically disclose the amount of monetary damages sought" in order to trigger the 30-day clock. *Walker*, 727 F.3d at 824. However, in this case, unlike *Walker*, Plaintiffs are seeking both monetary

9

damages *and* injunctive relief.  The *Walker* holding only applies to Plaintiffs' damages claims.³ Plaintiffs' claims for injunctive relief provide an independent basis from which JCI could determine that the amount in controversy exceeded $5 million.  The Eleventh Circuit recently ruled that a request for declaratory judgment alone (with no damages request) was "up to the task" of satisfying CAFA's $5 million amount-in-controversy requirement.  *South Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315-16 (11th Cir. 2014).  Here, just as in *Clemens*, JCI was in the better position to determine that the cost of Plaintiffs' injunctive relief would exceed $5 million.

The clear untimeliness of the removal of this action is dispositive of the present motion.  Because JCI's Notice of Removal was filed many months too late, this case must be remanded to state court.

**B.     JCI Has Waived Any Right to Removal.**

Even apart from the untimeliness of JCI's removal, this case should be remanded to state court because JCI's conduct effected a waiver of any right it might have had to removal.  As is described in more detail in the previous section, JCI's Notice of Removal was filed 359 days after Plaintiffs' Complaint was served, and followed, among other things, JCI's unsuccessful attempt to have all of Plaintiffs' claims dismissed.  (*See supra*, at pp. 7-8.)  JCI never once, prior to filing its Notice of Removal, indicated its intent to remove this case to federal court to either the state court or Plaintiffs.  Rather, all of JCI's affirmative actions taken in state court illustrated JCI's intention to actively litigate the case in state court.

---

³ *Walker* involved a contract dispute, and the *Walker* court did not mention or consider equitable relief.  Moreover, every case the *Walker* court cited involved requests for monetary damages, and not equitable relief.

10

In *Fate v. Buckeye State Mut. Ins. Co.*, 174 F. Supp. 2d 876 (N.D. Ind. 2001), the court found the defendant, Buckeye, had waived removal under circumstances that closely resemble those here:

> Buckeye has certainly taken affirmative action in state court by moving to dismiss the case and attempting to bifurcate the issues. The intent of these motions was not to merely defend against plaintiff's claims, but to dispose of the case altogether. Moreover, as discussed in the previous section, from the time of the initial complaint, Buckeye was on notice that the amount-in-controversy requirement may be met. Rather than immediately investigate further to determine whether the case was removable, *Buckeye chose to seek dismissal of the case in state court and to litigate in state court for nearly one full year. Only when the state court denied its motions did Buckeye remove the case to this Court.* Because Buckeye sought affirmative action in state court before removing to federal court, it evidenced an intent to litigate in state court. Accordingly, Buckeye waived its right to remove this case to federal court.

*Id.* at 881-82 (emphasis added). As this Court recognized in *Kadambi v. Express Scripts, Inc.*, 2014 WL 2589673 (N.D. Ind. June 10, 2014), waiver may be found under proper circumstances; while attending a motion to dismiss hearing may not constitute waiver, waiting until an adverse ruling is handed down in the state court may indeed result in waiver. *Id.* at *4-5 (citing to several cases including *Fate*, 174 F. Supp. 2d at 882); *see, e.g., Hill v. Citicorp*, 804 F. Supp. 514, 517 (S.D.N.Y. 1992) (holding defendants waived their right to removal where they filed and lost a motion "seek[ing] a disposition, in whole or in part, of the action its merits"); *McKinnon v. Doctor's Associates, Inc.*, 769 F. Supp. 216, 218-19 (E.D. Mich. 1991) ("[I]f a potentially dispositive motion, such as a motion to dismiss, is made and argued by the defendant, the state court's adverse decision cannot be 'appealed' to this Court by way of removal.") (internal citation omitted); *c.f. Cogdell v. Wyeth*, 366 F.3d 1245, 1249 (11th Cir. 2004) (holding that defendant did not waive removal where it filed a motion to dismiss in state court, but removed the case to federal court *before* the state court ruled on the motion).

11

Because JCI engaged in extensive litigation in state court for one week short of a year, including litigating to completion an unsuccessful motion to dismiss all claims, initiating extensive discovery unrelated to the cost of complying with the injunction sought by Plaintiffs, appearing for several hearings, and attempting to forestall the state court's disposition of Plaintiffs' motion for class certification, it has waived any right it might have had to seek removal.

### III.     REQUEST FOR ATTORNEY FEES

An order remanding the case may require payment of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Typically, orders of remand will not include an award of attorney fees and costs unless the removing party "lacked an objectively reasonable basis for seeking removal." *See Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005). The purpose of this standard has been described as follows: "to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' decision to afford defendants a right to remove when the statutory criteria are satisfied." Moore's Fed. Prac. (3d) § 107.41[3][a][ii] (citing *Martin*, 546 U.S. at 140). The Seventh Circuit has interpreted *Martin,* and applied the following "general rule" for fee awards under § 1447(c):

> [I]f, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees. By contrast, if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorney's fees.

*Wolf v. Kennelly,* 574 F.3d 406, 412 (7th Cir. 2009) (quoting *Lott v. Pfizer, Inc.,* 492 F.3d 789, 793 (7th Cir. 2007)).

Accordingly, the question here is whether at the time JCI removed this case, clearly established law demonstrated that it had no basis for removal. The answer lies in JCI's own Notice of Removal. The clearly established law – that the amount in controversy for injunctive relief may be determined by defendant's cost to comply – was cited by JCI. (DE 1 ¶ 19 (citing *In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 609-10 (7th Cir. 1997)). JCI's admission that Plaintiffs' Complaint sought injunctive relief that "would certainly exceed $5 million" forecloses JCI's removal upon any date after July 3, 2014 (30 days after JCI received the Complaint). Yet, JCI litigated in state court for 359 days, seeking to dismiss all of Plaintiffs' claims, and when it lost on its motion, sought to stay the class hearing while taking class discovery of the class representatives and of Plaintiffs' environmental expert. Only one day prior to a class hearing scheduling conference, JCI finally played its federal cards, claiming to have timely removed. Under these facts, JCI lacked an objectively reasonable basis for removal. *See, e.g., Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 447-48 (9th Cir. 1992) (affirming award of attorney fees incurred in remanding case where defendant removed the case after it had actively litigated in state court thereby waiving right to removal). This Court should award "just costs" including attorney's fees.

## IV. CONCLUSION

JCI's Notice of Removal admits that "JCI has already spent more than $10 million on remediation efforts, which remain ongoing," and that "[a]s a result, an injunction ordering the additional and far more rigorous cleanup that Plaintiffs now seek would certainly exceed $5 million." (DE 1 at ¶ 20.) JCI's Notice of Removal also acknowledges that the "rigorous" nature of the cleanup Plaintiffs seek—one in which JCI must "clean up and remediate all of Plaintiffs' properties (including soil, groundwater, and indoor air) to levels at which TCE and related

13

contaminants are not detectable" (*Id.* at ¶ 19)—is disclosed in Plaintiffs' Complaint. (*See id.* (citing "Ex. A, Compl., Prayer For Relief, ¶4" as the basis for the passage just quoted).) Because Plaintiffs' Complaint provided clear notice that the predicates for removal were present, JCI's Notice of Removal was due 30 days after it received the Complaint.  Instead it was filed nearly a year later.  Its gross untimeliness requires that this case be remanded.

Moreover, JCI waived any right it might have had to seek removal by actively litigating this case in state court for almost a year. Only after it saw things were not going well did it decide to remove the case to federal court.  Courts do not permit the removal statutes to be used in this manner.  This Court should not allow JCI to do so here, and should order JCI to pay Plaintiffs' "just costs," including attorney fees, incurred as a result of JCI's improper removal.

Respectfully submitted,

*/s/ Thomas A. Barnard*_____
Thomas A. Barnard, Attorney No. 4011-49
Rodney L. Michael, Jr., Attorney No. 23681-49
Melissa A. Gardner, Attorney No. 29920-49
Taft Stettinius & Hollister llp
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
tbarnard@taftlaw.com
rmichael@taftlaw.com
mgardner@taftlaw.com
Telephone:   317.713.3500
Facsimile:    317.713.3699

John D. Ulmer, Attorney No. 921-20
Yoder, Ainlay, Ulmer, & Buckingham, LLP
130 North Main Street
Goshen, Indiana 46527
Telephone:   574.533.1171

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.  Parties may access this filing through the Court's system.

The undersigned hereby certifies that on June 26, 2015, a copy of the foregoing was mailed by U.S. Mail, to:

TOCON Holdings LLC
c/o Tony Adkins
5722 Pond Ridge Circle
Georgetown, IN 47122

*/s/ Thomas A. Barnard*_____

12057544