IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| AMOS and DEBBIE HOSTETLER, | ) | |
| RITA CHAIREZ, BECKY NULL, and | ) | |
| MARIA TOVAR, on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 3:15-cv-00226-JD-CAN |
| | ) | |
| JOHNSON CONTROLS, INC. and | ) | |
| TOCON HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' SUPPLEMENTAL MOTION TO REMAND**

In supplement to their Motion to Remand filed June 26, 2015, Plaintiffs, on behalf of themselves and a class of similarly situated individuals, and pursuant to 28 U.S.C. § 1447(c), request the Court to remand this case to the Circuit Court of Elkhart County, Indiana.

## I.     INTRODUCTION

On June 26, 2015, Plaintiffs moved to remand this case to state court on grounds that Defendant Johnson Controls, Inc. ("JCI") filed its Notice of Removal eleven months too late, and also waived any right to seek removal by vigorously litigating the case in state court.  However, untimeliness and waiver are not the only defects in JCI's removal of this case—two other grounds for remand exist.  First, the Class Action Fairness Act ("CAFA"), on which JCI bases its claim of federal jurisdiction, requires district courts to decline jurisdiction over certain types of "local controversies."  This case, arising from chemical leaks from a single industrial parcel affecting the adjacent neighborhood, is exactly the type of local controversy that courts and

Congress (in CAFA's legislative history) have said should be excluded from the federal jurisdiction otherwise directed by CAFA.

Second, JCI's alternative theory of federal jurisdiction—that Indiana Defendant TOCON Holdings, LLC ("TOCON") was fraudulently joined, and hence that complete diversity exists—contradicts its own pleadings and emails produced in this litigation just weeks ago. Plaintiffs' claims against TOCON are well supported by the alleged facts and controlling law. JCI cannot come close to carrying the heavy burden borne by a removing party seeking to establish fraudulent joinder.

Moreover, JCI has no objectively reasonable basis for arguing that TOCON is not a significant defendant under CAFA or that TOCON was fraudulently joined, because JCI itself has sued TOCON, alleging that TOCON caused Plaintiffs' injuries. Accordingly, the Court should award applicable costs and expenses, including attorney fees, under 28 U.S.C. § 1447(c).

## II.     ARGUMENT

### A.     <u>CAFA's Local Controversy Exception Applies Here.</u>

CAFA's Local Controversy Exception is found in 28 U.S.C. § 1332(d)(4), and provides in pertinent part:

A district court shall decline to exercise jurisdiction under paragraph (2)—

(A)(i)  over a class action in which—

> (I)     greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

> (II)    at least 1 defendant is a defendant—

>> (aa)  from whom significant relief is sought by members of the plaintiff class;

>> (bb)  whose alleged conduct forms a significant basis for

2

the claims asserted by the proposed plaintiff class; and

(cc)  who is a citizen of the State in which the action was originally filed; and

(III)  principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii)  during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or similar persons.

This exception was designed to exclude from federal jurisdiction those class actions involving truly local issues or injuries.  CAFA was enacted in 2005 to "assure fair and prompt recoveries for class members with legitimate claims," while also "restor[ing] the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance."  Pub. L. No. 109-2, Section 2(b)(1)-(2) (listing purposes of CAFA).  This very language, however, makes clear there are some *intrastate* class actions, involving local class members and overwhelmingly local issues, which can and should be adjudicated in state court.  As observed in *Estate of Hanna v. Agape Senior, LLC*, 2015 WL 247906 (D.S.C. Jan. 20, 2015):

Further review of CAFA's legislative history reveals that the purpose of the local controversy exception is to permit class actions with a truly local focus to remain in state court.  Therefore, a "court's analysis for jurisdictional purposes should focus on whether the case is a truly local controversy warranting remand or whether it is an interstate class action . . . involv[ing] more people, more money, and more interstate commerce that Congress intended to place in federal court."

*Id.* at *3 (citations omitted).

Environmental cases considered under CAFA have held that chemical leaks from a *single* known location, contaminating a *single* adjacent neighborhood, are deemed "local controversies"

3

due to their uniquely *truly local* nature.  For example, in *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240 (10th Cir. 2009), a case factually similar to this one, the plaintiffs sought injunctive relief and monetary damages arising from soil and groundwater contamination caused by a neighboring smelter operation.  In affirming the district court's remand of the case to state court the Tenth Circuit concluded, "This case presents a classic example of what Congress intended to cover when it created this [local controversy] exception.  It is a 'truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others.' "  *Id.* at 1243; *see also Davis v. Omega Refining, LLC*, 2015 WL 3650832, at *6-7 (E.D. La. June 11, 2015) (applying the Local Controversy Exception in a case involving a single facility owned by two successive defendants).

The holding in *Coffey* aligns with the legislative history of the Local Controversy Exception.  In fact, the Senate Report uses a chemical leak within a neighborhood as an example of the type of class action intended to constitute a "local controversy."  In describing the type of case that should be remanded under CAFA, the Senate Report stated:

> The purpose of this [principal injuries] criterion is to ensure that this exception is used only where the impact of the misconduct alleged by the purported class is localized.  For example, a class action in which local residents seek compensation for property damage resulting from a chemical leak at a manufacturing plant in that community would fit this criterion, provided that the property damage was limited to residents in the vicinity of the plant.

S. Rep. 109-14, at *40.

The Seventh Circuit has recognized that the Local Controversy Exception was "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state."  *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 682 (7th Cir. 2006).  The chemicals that were leaked and dumped by Defendants in this case have created an underground

plume of contamination impacting adjacent homes and businesses in a defined local area. Therefore, this case is one in which the controversy is "strongly linked" to Indiana; this is not a national or interstate case.   And as the discussion that follows shows, all of the elements of CAFA's Local Controversy Exception are met here. As a result, the Court should decline to exercise jurisdiction over this "truly local" case.

> **1.  Plaintiffs' Proposed Class Meets the Two-Thirds Citizenship Requirement.**

Under 28 U.S.C. § 1332(d)(4)(A)(i)(I), Plaintiffs must show, by a preponderance of the evidence, that greater than two-thirds of the proposed class members are citizens of Indiana.  *See In re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010).  A person's citizenship for purposes of diversity jurisdiction "means domicile (the person's long-term plan for a state of habitation) rather than just current residence."  *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014). While some putative class members may have left Indiana, the evidence provided with this Motion and discussed below establishes that Plaintiffs meet the citizenship requirement of the Local Controversy Exception.

The Seventh Circuit in *Sprint* endorsed two approaches for satisfying the two-thirds citizenship element:   (i) offering evidence of a representative sample of the putative class showing that the two-thirds requirement is met; or (ii) limiting the class to "citizens" of the state in question.  593 F.3d at 675-76.  Here, Plaintiffs adopt the first approach and have followed the decisions in *Sprint, Myrick, In re Text Messaging Antitrust Lit.,* 2011 WL 305385 (N.D. Ill. Jan. 21, 2011), and *Keltner v. SunCoke Energy, Inc.,* 2015 WL 3400234 (S.D. Ill., May 26, 2015).

In *Sprint*, the court explained how plaintiffs could meet their burden:

> For starters, . . .they might have submitted evidence that two-thirds of the class members were indeed Kansas domiciliaries or businesses.  Given that there are probably hundreds of thousands of putative class members, if not more, it would be infeasible to document each class member's citizenship individually, but the

district court could have relied on evidence going to the citizenship of a representative sample. This evidence might have included affidavits or survey responses in which putative class members reveal whether they intend to remain in Kansas indefinitely, or, if they are businesses, their citizenship under the relevant test. Given those results and the size of the sample and the estimated size of the proposed class, the district court could then have used statistical principles to reach a conclusion as to the likelihood that two-thirds or more of the proposed class members are citizens of Kansas. Statisticians and scientists usually want at least 95 percent certainty, but any number greater than 50 percent would have allowed the district court to conclude that the plaintiffs had established the citizenship requirement by a preponderance of the evidence.

*Id.* at 675-76 (citations omitted). In 2014, the Seventh Circuit provided additional detail in

*Myrick*, describing an evidentiary option for a plaintiff class consisting of health insurance

policyholders:

[T]ake a random sample of policyholders (100, say), ascertain the citizenship of each of these on the date the case was removed, and extrapolate to the class as a whole. If the sample yields a lopsided result (say, 90% Illinois citizens or only 50% Illinois citizens) then the outcome is clear without the need for more evidence. (The more lopsided the result, the smaller the sample needed to achieve statistical significance.) If the result is close to the statutory two-thirds line, then do more sampling and hire a statistician to ensure that the larger sample produces a reliable result.

764 F.3d at 665.

Finally, two district courts have implemented these approaches to find that plaintiffs had

met the two-thirds requirement. In *Text Messaging,* the plaintiffs satisfied the test by: (i)

conducting a telephone survey of 15% of the putative class members; and (ii) performing a

public records search for non-respondents. 2011 WL 305385, at *3. The court was satisfied

with the evidence showing that over two-thirds of the business survey respondents, and over

85% of the individual survey respondents, were Kansas citizens. *Id.* In *Keltner,* a case involving

claims of air pollution from an adjacent steel mill, the plaintiffs offered: (i) declarations from

181 putative class members, each attesting to the fact that they currently resided in Illinois and

intended to remain in Illinois; and (ii) a declaration from an expert statistician concluding that

more than two-thirds of the class members resided and intended to remain in Illinois. 2015 WL 3400234, at *7. The court determined that "the material presented by plaintiffs was sufficient to meet the preponderance of the evidence standard." *Id.* at *8.

Here, Plaintiffs easily satisfy the Seventh Circuit test described in *Sprint.* The proposed class in this case consists of: "all persons within the Class Area (defined below) who have owned, rented, or occupied property that has been impacted by the Defendants' contamination and toxic vapors caused by releases from Defendants' activities at the Site between 1992 and May 30, 2014." (Pls.' Motion for Class Cert., Docket Entry ("DE") 1-17, at ECF pp. 9-10; *see also* Complaint, DE 4-1, at ¶ 101.) The Class Area is based upon the expert opinion of Dr. Vasiliki Keramida, an environmental engineer, who estimated the geographic area of impact and depicted it in Exhibit B to her expert affidavit. (*See* DE 1-17, Attachment A: Affidavit of Dr. Vasiliki Keramida, at ECF pp. 37, 62.) The Class Area contains 103 homes, one vacant lot, and 11 homes that were demolished. (*See* DE 1-17, Attachment B: Affidavit of Penny J. Scott, at ECF p. 66, ¶ 9.) The Class Area also contains Goshen High School and nine active business properties. (*See* Affidavit of John Ulmer, attached hereto as Exhibit A, at ¶¶ 2-3.)

In order to identify potential class members, Plaintiffs consulted three different sources. First, Penny Scott, a paralegal and former Special Agent with the Criminal Investigation Division of the Internal Revenue Service, personally visited the Class Area and identified each residential address. (DE 1-17, at ECF p. 65, ¶¶ 2-3, 6.) Ms. Scott then conducted a review of the Polk City Directory, information obtained from Elko Title Corp., and information provided by neighborhood residents to identify potential residents at those addresses during the relevant time period. (*Id*. at ECF pp. 65-66, ¶¶ 4, 7.) The Polk City Directory contains information obtained

from 67 different sources, including public records, telephone directories, utility records, deed transfers, surveys, and self-reported information. (*Id.* at ECF p. 65, ¶ 5.)

Second, Plaintiffs performed a title search of each of the properties within the Class Area for the period January 1, 1992 through May 30, 2014 and obtained the names of all of the property owners during the class period. (*See* Affidavit of Elko Title Corp., attached hereto as Exhibit B.) Finally, Plaintiffs engaged the services of Gerard Alexander, a private investigator and former Special Agent of the Federal Bureau of Investigation, to perform database searches for each property. (Declaration of Gerard Alexander, attached hereto as Exhibit C, at ¶¶ 2-5.) Mr. Alexander ran 2,636 searches and identified 2,532 individuals who had potentially resided at those properties during the relevant time period. (*Id.* at ¶ 8.) Plaintiffs compiled the information and removed duplicates, and then, as suggested by the court in *Myrick*, hired an expert statistician, Dr. Malcolm Cohen, who holds a Ph.D from M.I.T.

Dr. Cohen and his assistant, Laura Steiner, an expert on survey design and implementation, designed a telephone survey to determine the citizenship of each of the potential class members. (*See* Report of Dr. Malcolm Cohen and Laura Steiner, attached hereto as Exhibit D.) In connection with the telephone survey a total of 7,469 phone calls were made in order to reach all eligible respondents. (*Id.* at pp. 3-4.) The respondents were asked whether they resided at the listed address during the class period, whether they resided in Indiana on the date the Complaint was filed, whether they still reside in Indiana, and whether they intend to remain in Indiana. (*Id.* at p. 3.) The telephone survey results indicated that 76% of those reached were Indiana citizens. (*Id.* at p. 5.) Dr. Cohen concluded with a 95% confidence interval that the estimated proportion of the entire targeted survey group who are Indiana citizens would fall between 69% and 83%. (*Id.* at p. 6.) Dr. Cohen further concluded that with a 50% confidence

interval (the standard adopted by the Seventh Circuit in *Sprint*) the range is between 74% and 79%, again based solely upon the telephone survey.  (*Id.*)

In addition to the telephone survey, Plaintiffs interviewed 90 potential class members for whom they have contact information.  All of those individuals signed affidavits stating that they were Indiana residents when the Complaint was filed, they are still Indiana residents, and that they intend to remain in Indiana.  (*See* Compilation of Affidavits, attached hereto as Exhibit E.) Plaintiffs also engaged the services of Dallas Kunkle, a private investigator and former FBI Special Agent, to conduct an in-person survey of residents in the Class Area.  Mr. Kunkle visited 60 homes and was able to survey 48 individuals.  (Affidavit of Dallas Kunkle, attached hereto as Exhibit F, at ¶¶ 6-7, 9.)  46 of the 48 individuals surveyed were Indiana residents when the Complaint was filed, are still Indiana residents, and intend to remain in Indiana.  (*Id.* at ¶ 9.) Finally, Plaintiffs were able to obtain certificates of business for five of the nine businesses in the neighborhood and deed information for Goshen High School.   (Compilation of Business Certificates and Deed Information, attached hereto as Exhibit G.)  That information demonstrates that all five businesses and the High School qualify as Indiana citizens.  (*See id.*)

After the deduplication of all results, Dr. Cohen included the results of the in-person surveys and affidavits with the results of the telephone survey and concluded that over 86% of identified potential class members are Indiana residents with an intent to remain in Indiana. (Exhibit D, at p. 6.)  Dr. Cohen further concluded that the percentage of Indiana citizens in the proposed class far exceeds the required two-thirds, and that the use of multiple methodologies, such as making over 7,000 phone calls, conducting in-person interviews, and including data from individuals who had signed affidavits, represented a substantial effort to reach eligible class members.  (*Id.* at pp. 6-7.)

In *Sprint*, the Court suggested that the plaintiffs could have obtained affidavits or survey responses in which putative class members reveal whether they intend to remain in Kansas indefinitely, and then submitted the results to a statistician to determine the likelihood that two-thirds or more of the proposed class were citizens of Kansas.  593 F.3d at 675-76.  That is the exact approach Plaintiffs have taken in this case.  In fact Plaintiffs in this case have done even more because they attempted to reach *every* potential class member.  The results of over 7,000 phone calls and dozens of in-person interviews indicate that over 86% of the identified population are Indiana citizens.  Dr. Cohen has concluded with a 95% confidence interval that more than two-thirds of the proposed class are Indiana citizens.  Through this evidence, Plaintiffs have established by a preponderance of the evidence that two-thirds or more of the putative class members are Indiana citizens.

### 2. Defendant TOCON Is an Indiana Citizen Whose Alleged Conduct Forms a Significant Basis for the Claims Asserted and From Whom Significant Relief Is Sought.

As provided by 28 U.S.C. § 1332(d)(4)(A)(i)(II), for the Local Controversy Exception to apply there must be at least one defendant

    (aa)    from whom significant relief is sought by members of the plaintiff class;

    (bb)    whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

    (cc)    who is a citizen of the State in which the action was originally filed. . . .

There is no question that the foregoing subsection (cc) is met here.  TOCON is a limited liability company organized under Indiana law with its principal place of business in Syracuse, Indiana.  (TOCON's Answer to Complaint, DE 7, at p. 2 ¶ 3.)  Under 28 U.S.C. § 1332(d)(10), a limited liability company is a citizen of the state where it has its principal place of business and

also of the state under whose laws it is organized.  Therefore TOCON is an Indiana citizen.  JCI does not dispute that.  (*See* Notice of Removal, DE 1, at ¶ 24 n.4.)

JCI contends, however, that the foregoing subsections (aa) and (bb) of the Local Controversy Exception do not apply.  JCI bases its argument entirely on extrinsic evidence. First, JCI argues based on deposition testimony by Plaintiffs' expert, Dr. Keramida, that TOCON's alleged conduct is not a significant basis for Plaintiffs' claims.  (*See* DE 1, at ¶¶ 25-26.)  Second, JCI argues that because Plaintiffs have not yet served discovery on TOCON or sought judicial intervention based on its nonparticipation in hearings and depositions, it follows that TOCON is not a defendant from whom significant relief is sought.  (*See id.* at ¶¶ 27-28.) For the reasons discussed below, JCI's arguments in both regards should be rejected.

a.     Extrinsic evidence should not be considered in determining compliance with subsections (aa) and (bb).

As an initial matter, JCI's argument should be rejected because it is based solely on matters outside the pleadings.  While the Seventh Circuit has not addressed this issue, for purposes of determining compliance with subsections (aa) and (bb) "the majority of circuits find that the district court should consider only the allegations in the plaintiff's complaint or petition for damages." *Johnson v. MFA Petroleum Co.*, 2013 WL 3448075, at *4 (W.D. Mo. July 9, 2013) (citing *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1015 (9th Cir. 2011) and collecting cases).  *See also Davis*, 2015 WL 3650832, at *6-7 (looking at only the complaint's allegations in concluding that the local defendant was significant); *Dutcher v. Matheson*, 16 F. Supp. 3d 1327, 1336 (D. Utah 2014) (considering only the allegations of the complaint in analyzing compliance with subsections (aa) and (bb) and refusing to permit jurisdictional discovery of facts relevant to those subsections); *Simmons v. Ambit Energy Holdings, LLC*, 2014 WL 5026252, at *6 (S.D.N.Y. Sept. 30, 2014) (restricting analysis under subsections (aa) and

(bb) solely to allegations of the complaint); *City of O'Fallon, Mo. v. Centurylink, Inc.*, 930 F. Supp. 2d 1035, 1049 (E.D. Mo. 2013) (same); *Anderson v. Hackett*, 646 F. Supp. 2d 1041, 1048 (S.D. Ill. 2009) (same).

This Court should follow the majority rule.  Otherwise it may be forced to "wade into the factual swamp of assessing the financial viability of a defendant as part of this preliminary consideration" despite the fact that "nothing in the language of the statute . . . indicates Congress intended district courts to" do so.  *Coleman*, 631 F.3d at 1017 (quoting *Coffey*, 581 F.3d at 1245).  As the *Coleman* court also observed, "We see nothing in CAFA that indicates a congressional intention to turn a jurisdictional determination concerning the local defendant's 'alleged conduct' into a mini-trial on the merits of the plaintiff's claims." *Id.* at 1017.

Applying the majority rule and considering only the allegations of the Complaint, there is no question that TOCON's alleged conduct forms a significant basis for Plaintiffs' claims and that Plaintiffs seek significant relief from TOCON.  Regarding TOCON's alleged conduct, for this prong of the Local Controversy Exception courts compare "the local defendant's alleged conduct to the alleged conduct of all the Defendants." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 156 (3d Cir. 2009).  Particularly where the local defendant's conduct is "deeply intertwined" with that of the non-local defendant, the "significant basis" test is satisfied.  *Haynes v. EMC Mortgage Corp.*, 2010 WL 1445650, at *4 (N.D. Cal. Apr. 12, 2010).  Here Plaintiffs' claims for damages and injunctive relief all center on the manufacturing plant formerly owned by JCI that is now owned by TOCON.  Plaintiffs' claims against TOCON are factually and legally intertwined with their claims against JCI because they arise out of the same source of contamination that has caused and continues to cause harm to class members and their properties.

Moreover, Plaintiffs not only allege that TOCON has incurred liability by allowing chemicals released by JCI to migrate off-site, they also allege that TOCON has itself released hazardous substances into the environment.  In particular, Plaintiffs allege that "[a]fter TOCON purchased the Plant from JCI, TOCON had several of the buildings demolished and then left the resulting debris piles in place," and that "those debris piles contain hazardous chemicals such as asbestos, lead, mercury and/or PCBs."  (DE 4-1, at p. 2.)  Plaintiffs allege further that "[t]he debris piles and associated contamination resulting from TOCON's actions in demolishing buildings at the former Plant constitute a further and additional nuisance and further interferes with the Plaintiffs' use and enjoyment of their properties."  (*Id.* at ¶ 125.)  And they allege that "Defendant TOCON contributed to the release of TCE and other hazardous chemicals from the Plant into the Neighborhood by failing to prevent further off-site migration of Contamination from the Plant, by failing to timely remediate the off-site Contamination emanating from the Plant, and by contributing additional waste to the Neighborhood through its improper storage of solid and potentially hazardous waste."  (*Id.* at ¶ 139.)  Thus, Plaintiffs have alleged they have been harmed by wrongful conduct of TOCON that is both intertwined with that of JCI and that has independently contributed to the contamination at issue.

Regarding the relief Plaintiffs seek from TOCON, courts hold that CAFA's "significant relief" test is satisfied where "[t]he complaint seeks damages equally" from the local and non-local defendants.  *Coleman*, 631 F.3d at 1020.  And in cases involving requests for injunctive relief, the test is met where the plaintiff seeks relief from the local defendant that is not "itself insignificant," *id.*, or when that requested relief is "important" and not "trivial."  *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 369 (E.D. La. 2007).  Here Plaintiffs' Complaint seeks compensatory damages equally from TOCON and JCI for trespass (DE 4-1, at ¶¶ 118-22),

nuisance (*id.* at ¶¶ 123-27), negligence (*id.* at ¶¶ 128-30, 132-36), environmental legal action (*id.* at ¶¶ 139-40), and negligent infliction of emotional distress (*id.* at ¶¶ 141-44).  Punitive damages are also sought equally from TOCON and JCI.  (*Id.* at ¶¶ 151-55.)  And the injunction sought by Plaintiffs, requiring complete removal of all contamination at the former plant and throughout Plaintiffs' neighborhood, is directed equally at TOCON and JCI.  (*Id.* at p. 28, ¶ 4.)  In fact, because TOCON now owns the plant site that Plaintiffs allege to be an ongoing source of contamination in their neighborhood, Plaintiffs cannot obtain complete relief without an injunction that requires TOCON's participation in the needed cleanup.

     *Davis* is instructive on this point.  Just like the instant case, the source of contamination in *Davis* was a single facility operated by two successive owners.  2015 WL 3650832, at *1.  The plaintiffs alleged that Omega Refining, Inc. allowed releases of chemicals during its period of ownership, and that the subsequent and current owner, Vertex Refining LA, LLC, also allowed releases during its short tenure from May 2014 until the filing of the plaintiffs' complaint on January 16, 2015.  *Id.* at *6.  The defendants argued that plaintiffs could not possibly seek significant relief from Vertex and that Vertex's conduct could not form a significant basis of plaintiffs' claims, because Vertex had only owned the facility for a few months and most of the alleged releases occurred during Omega's ownership.  *Id.*  The court disagreed.  Based solely on the pleadings, the court concluded:

> Considering the allegations as a whole, it cannot be said that plaintiffs do not seek significant relief from Vertex.  They allege that the facility continues to release chemicals that harm them.  Omega owned the facility for two years and about four months encompassed by the complaint, 2012 to May 2015.  Vertex has owned the facility for a little over a year.  The complaint encompasses *current and future events* that may have occurred during Vertex's ownership of the facility.

*Id.* at *7 (emphasis added).  Likewise, Plaintiffs' Complaint here encompasses current and future events, and the requested injunctive relief necessarily involves both JCI and TOCON.

In sum, by focusing on the allegations of Plaintiffs' Complaint as the Court should do, it is indisputable that Plaintiffs seek significant relief from TOCON and that TOCON's alleged conduct forms a significant basis for the claims they assert.

> b.  <u>Should the Court wish to consider extrinsic evidence, it is clear that Plaintiffs' claims against TOCON meet CAFA's "significant basis" requirement</u>.

Plaintiffs' claims in this case are based both on JCI's actions in polluting their neighborhood as well as TOCON's subsequent actions in causing additional pollution and failing to stop the existing contamination from migrating further into the neighborhood.  JCI has itself alleged that TOCON's conduct caused Plaintiffs' injuries.  One of JCI's defenses in this action is that "Plaintiffs' alleged injuries are caused in whole or in part by Tocon."  (JCI's Answer and Affirmative Defenses to Complaint, DE 10, at p. 45.)   Furthermore, in support of its counterclaim against TOCON, JCI alleged:

> Plaintiffs Amos and Debbie Hostetler, Rita Chairez, Becky Null and Maria Tover [sic] have alleged Claims against Johnson Controls *based upon* Environmental Laws and arising from *conditions arising after the Closing*.

(JCI's Counterclaim Against TOCON, DE 8, at p. 5, ¶ 7 (emphasis added).)  Yet, in spite of its pleadings to the contrary, JCI now argues in its Notice of Removal that "Plaintiffs' purported harm in each of the six Counts hinges entirely on the alleged chemical contamination and resulting underground plume of TCE and similar chlorinated contaminates created during JCI's alleged operation of the plant between 1937 and 2006, which was discovered decades before TOCON's 2007 purchase of the property."  (DE 1, at ¶ 26.)  JCI's new argument is belied by its own documents.

On April 18, 2013, JCI's Director of Environmental Affairs emailed IDEM and stated "[w]e could use your assistance on a potential waste management issue with regard to the current owner, Tony Adkins-TOCON Holdings, at the Goshen, IN Plant."  (Email and Attachments, Apr. 18, 2013, GZA0023158-64, attached hereto as Exhibit H, at GZA0023158.)  TOCON was preparing to demolish the structures on the site, and JCI was "concerned about the potential release of chemicals stored in 55 gallon drums on the site."  (*Id.*)  JCI "estimate[d] over 100 drums on-site."  (*Id.*)  JCI explained:  "The drums have been moved within the site a few times and Johnson Controls is *concerned that the contents of the drums could be leaking and could have the potential for being improperly disposed on-site, which would no doubt lead to further remedial actions*."  (*Id.* (emphasis added).)  Then, on September 19, 2014—almost three months *after* Plaintiffs' Complaint in this action was filed—JCI complained to IDEM that "all the open, leaking drums and drums with hazardous waste labels that the owner/contractor was cited for by the City of Goshen have been moved out of sight behind the large dirt pile."  (Email, Sept. 19, 2014, GZA0023751, attached hereto as Exhibit I.)  JCI also complained that new debris had been "trucked/dumped onto the site" and that "[t]he material has an odor as well."  (*Id.*)  JCI's prior pleadings in this case, and the emails it sent to IDEM complaining about TOCON dumping waste at the site and storing leaking drums of hazardous waste, plainly contradict its argument in its Notice of Removal that "Tocon's conduct has no significant relationship to the claims of groundwater, soil, and indoor air contamination in this suit."  (*See* DE 1, at ¶ 24.)

Furthermore, according to Becky Hershberger, the Brownfields Coordinator for the City of Goshen, demolition debris containing unabated asbestos and possibly other hazardous materials has been shoved into holes in the ground and then compacted down with a backhoe. (Affidavit of Becky Hershberger, attached hereto as Exhibit J, at ¶¶ 1, 9.)  Jason Kauffman, the

16

Stormwater Coordinator for the City of Goshen, has inspected the site several times since TOCON took ownership.  (Affidavit of Jason Kauffman, attached hereto as Exhibit K, at ¶¶ 1-2.) Mr. Kauffman has observed 55-gallon drums overflowing at the site as well as materials entering the stormwater system.  (*Id.* at ¶¶ 3-4.)  On December 31, 2014, and again on April 21, 2015, IDEM cited Tony Adkins, the owner of TOCON, for violating Indiana's open dumping laws because of activities at the site.  (Inspection Summary/Violation Letter, Dec. 31, 2014, attached hereto as Exhibit L; Inspection Summary Follow-Up, Apr. 21, 2015, attached hereto as Exhibit M.)  Photographs taken by IDEM in October 2014 and March 2015 show numerous piles of debris at the site including a close up of a partially buried barrel with a hazardous waste label on it.  (Email and Attachments, Jan. 6, 2015, attached hereto as Exhibit N; Email and Attachments, Apr. 22, 2015, attached hereto as Exhibit O.)  Photographs taken by Plaintiffs' counsel on June 24, 2015 show barrels of hazardous waste at the site and clear staining on the ground below them.  (Photographs, taken June 24, 2015, attached hereto as Exhibit P.)  Additionally, Plaintiff Becky Null's front porch is located approximately 50 feet from a large debris pile that likely contains unabated asbestos and other hazardous materials.  (Photograph, taken June 11, 2015, attached hereto as Exhibit Q.)  These dangerous chemicals and all demolition debris must be properly remediated, and there is absolutely no question that TOCON's activities at the site form a significant basis of Plaintiff's claims in this action.

In its Notice of Removal, JCI points to Dr. Keramida's testimony and argues it "is an admission that Plaintiffs have no evidence to support any allegations against TOCON for causing or contributing to the contamination."  (DE 1, at ¶ 26.)  JCI's characterization of Dr. Keramida's testimony is not even close to being correct.

To begin with, what Dr. Keramida said is that she did not "have any information to date to show that the contamination was *caused* by Tocon."  (DE 1, at ¶ 25 (quoting Keramida Dep. at 46:21-47:7) (emphasis added).)  Dr. Keramida did *not* say that TOCON has not *contributed* to the contamination at issue, and in the environmental field, "cause" and "contribute" are materially different.  Indiana's Environmental Legal Action statute (the "ELA") imposes liability on anyone who "caused or contributed to" contamination, Ind. Code § 13-30-9-2, and a person who "contributed to" contamination can be liable even if he did not "cause" it.  *See Neal v. Cure*, 937 N.E.2d 1227, 1234 (Ind. Ct. App. 2010) ("On appeal, the Neals do not argue the Cures 'caused' the contamination, thus we concern ourselves only with whether the evidence demonstrated the Cures 'contributed' to the contamination.").

Indiana courts hold that a landowner may be deemed to have "contributed to" contamination for purposes of the ELA if it is aware someone else has contaminated its property but does nothing to prevent the contamination from migrating off-site.  *See JDN Properties, LLC v. VanMeter Enterprises, Inc.*, 17 N.E.3d 357, 362 (Ind. Ct. App. 2014) ("We conclude that a landlord who has knowledge that a tenant's use of land is causing environmental contamination, but does nothing to halt or remediate such contamination and goes on to sell that property to a third party without disclosing the property's condition, may fairly be said to 'share responsibility' for or contribute to such contamination.") (citation omitted).  As stated in her affidavit, Dr. Keramida does have information showing TOCON "contributed to" the contamination.  (Affidavit of Dr. Vasiliki Keramida, attached hereto as Exhibit R, at p. 2.)

Thus, not only did Dr. Keramida's deposition testimony *not* show the absence of evidence to support Plaintiffs' claims against TOCON as JCI asserts, testimony in her attached affidavit sets forth evidence that provides abundant support for those claims and thereby

demonstrates that TOCON's alleged conduct forms a significant basis for them.  Moreover, as described above, JCI itself reported TOCON for "leaking drums" at the site just months prior to Dr. Keramida's deposition; for JCI to suggest that "no evidence" exists against TOCON, or that Dr. Keramida made an "admission" of facts that JCI knows to be untrue, is duplicitous.  Notably, JCI did not produce its April 18, 2013 (Exhibit H) and September 19, 2014 (Exhibit I) emails to Plaintiffs until June 18, 2015, over a month after Dr. Keramida's deposition.

      c.    <u>Extrinsic evidence likewise shows CAFA's "significant relief" requirement is satisfied</u>.

JCI's argument that Plaintiffs do not seek "significant relief" from TOCON for purposes of subsection (aa) of CAFA's Local Controversy Exception hinges, in part, on the fact that "Plaintiffs have not served discovery on Tocon (while serving substantial discovery on JCI) and made no attempt to seek a default judgment or take any other action against Tocon," despite the fact that since answering Plaintiffs' Complaint "Tocon has not participated in this litigation at all, failing to attend any significant court hearings or participate at any depositions, and it remains unrepresented by counsel."  (DE 1, at ¶ 27.)  Because this argument by JCI is based solely on matters outside the pleadings, it is again legally insufficient to show that TOCON is not a defendant "from whom significant relief is sought by members of the plaintiff class."  But like JCI's argument concerning TOCON's conduct as a significant basis for Plaintiffs' claims, this argument would fail even if extrinsic evidence were considered.

First, despite the fact that JCI has asserted a counterclaim against TOCON and that TOCON has asserted a cross-claim against it, JCI, like Plaintiffs, has served no discovery on TOCON so far.  For JCI, the reason it has yet to take discovery from TOCON may be that no discovery deadline has been set at this point.  That reason applies to Plaintiffs as well.  But in Plaintiffs' case it is also true that they have been actively collecting evidence to prove their

claims against TOCON even without taking discovery from it. Much of that evidence is referenced in the attached affidavit of Dr. Keramida, and includes personal observations by local and state environmental officials, as well as photographs they have taken, documenting TOCON's liability-producing conduct. Moreover, the absence of discovery directed toward TOCON establishes, at most, Plaintiffs' and JCI's respective strategic decisions in this litigation.

Secondly, Plaintiffs have nothing to gain by trying to have a court prompt TOCON to defend itself more effectively, whether by attending hearings, participating in depositions, or doing anything else. If TOCON chooses not to oppose Plaintiffs' pretrial motions, and not to participate in discovery or otherwise prepare itself for trial, it is to its extreme detriment, not Plaintiffs'. But because TOCON did at least answer Plaintiffs' Complaint, there is no basis yet for Plaintiffs to request default judgment against it.

Finally, even if TOCON is ultimately shown not to have substantial assets with which to pay damages to Plaintiffs or to comply with an injunction requiring cleanup of contamination, it, like most businesses, likely has liability insurance, perhaps providing millions of dollars in coverage.[1] At a time they deem appropriate, Plaintiffs intend to seek discovery from TOCON as to the existence of such insurance (and as to TOCON's own financial wherewithal). Under Indiana law, Plaintiffs may proceed directly against TOCON's insurers to collect the proceeds of any such policies once they have obtained a judgment against TOCON. *See Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co.*, 708 N.E.2d 882, 886 (Ind. Ct. App. 1999), *trans. denied*. But any uncertainty about TOCON's ability to satisfy a judgment on its own has no relevance to whether significant relief is sought from it. As the Tenth Circuit said in *Coffey,* "The statutory language is unambiguous, and a 'defendant from whom significant

---

[1] Indiana law regarding insurance coverage for environmental contamination is very favorable for insureds because the standard "Pollution Exclusion" clause in general liability policies is generally unenforceable. *See, e.g., St. Paul Fire & Marine Ins. Co. v. City of Kokomo*, 2015 WL 3907455, at *5 (S.D. Ind. June 25, 2015).

relief is sought' does not mean 'a defendant from whom significant relief may be obtained.' " 581 F.3d at 1245.

In sum, Plaintiffs' Complaint plainly seeks significant relief from TOCON. That significant relief takes the form of a request for compensatory and punitive damages directed equally at JCI and TOCON, and a request for an injunction, also directed equally at JCI and TOCON, requiring cleanup of contamination throughout Plaintiffs' neighborhood and at its ongoing source—the plant site now owned by TOCON and formerly owned by JCI. None of the extrinsic evidence cited by JCI demonstrates that Plaintiffs do not seek significant relief from TOCON. Therefore, even if that extrinsic evidence were considered, Plaintiffs would still satisfy the "significant relief" requirement of CAFA's Local Controversy Exception.

### 3. The Remaining Requirements of CAFA's Local Controversy Exception Are Undisputedly Met.

Satisfaction of the remaining requirements of the Local Controversy Exception is not disputed by JCI. 28 U.S.C. § 1332(d)(4)(A)(i)(III) requires that "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed. . . ." Because all alleged injuries were to owners and/or occupants of buildings within a single Goshen, Indiana neighborhood, resulting from the contamination emanating from a nearby industrial site, *all* injuries to members of the plaintiff class were incurred in Indiana, where this action was filed.

The final requirement of the Local Controversy Exception is that no other class action asserting the same or similar factual allegations has been filed against any of the defendants within three years prior to the filing of this action. 28 U.S.C. § 1332(d)(4)(ii). After a comprehensive search, Plaintiffs have been unable to locate any similar class actions filed against JCI or TOCON based on their alleged contamination of property near their industrial site

in Goshen.  Therefore, like all of the other requirements of the Local Controversy Exception, the requirement of subsection (d)(4)(A)(ii) is satisfied.  As a result, the Court should decline to exercise jurisdiction over this case.

**B.**    **JCI Cannot Establish Fraudulent Joinder.**

As an alternative to its contention that federal jurisdiction over this action is provided by CAFA (*i.e.*, that the Local Controversy Exception does not apply), JCI maintains there is complete diversity of citizenship between the parties, and thus that jurisdiction exists under 28 U.S.C. § 1332(a)(1).  According to JCI, TOCON "was fraudulently joined for the apparent purpose of defeating JCI's right of removal," and hence TOCON should be "disregarded" for purposes of determining jurisdiction.  (DE 1, at ¶ 31.)

The sole basis for JCI's fraudulent-joinder argument is the same as that for its argument that TOCON's alleged conduct does not form a significant basis for Plaintiffs' claims.  That is, JCI maintains that the deposition testimony of Plaintiffs' expert, Dr. Keramida, establishes that Plaintiffs have no evidence to support their claims against TOCON.  In JCI's words:

> Dr. Keramida's May 12, 2015 deposition testimony, reproduced in relevant part in paragraph 20 [sic] above, demonstrates that Tocon was fraudulently joined for the apparent purpose of defeating JCI's right of removal. . . .
>
> *        *        *
>
> Because Dr. Keramida admits that Plaintiffs have no evidence linking Tocon to the alleged contamination, there is no "reasonable possibility that a state court would rule against" Tocon in this case.

(*Id.* at ¶¶ 31, 33 (citation and footnote omitted).)  Again, JCI knows that evidence of TOCON's recent "leaking drums" exists—JCI just did not produce its emails until after Dr. Keramida was deposed.

And even in her deposition, Dr. Keramida did not "admit[ ] that Plaintiffs have no evidence linking Tocon to the alleged contamination. . . ."  What she said, as noted previously,

was:  "I don't have any information to date to show that the contamination was caused by Tocon."  (*Id.* at ¶ 25 (quoting Keramida Dep. at 46:21-47:7).)  As also explained previously, a person can be liable under Indiana's Environmental Legal Action statute if he "contributed to" contamination even if he did not "cause" it, and allowing known contamination on one's property to migrate off-site can constitute "contributing to" contamination for purposes of that statute.  *See Neal*, 937 N.E.2d at 1234; *JDN Properties, LLC*, 17 N.E.3d at 362.  And as Dr. Keramida explains in her affidavit, she does have information showing TOCON *contributed* to the neighborhood contamination.  (Exhibit R, at p. 2.)  That information, she goes on to explain, involved TOCON's failure to remediate the contamination JCI left behind and its failure to prevent that contamination from migrating off-site.  (*Id.*)  The information she describes *does* support Plaintiffs' claims against TOCON.

Moreover, as again explained previously, Dr. Keramida's affidavit describes evidence that she recently became aware of showing TOCON may have "caused" contamination by its own affirmative actions.  (*Id.* at 3-4.)  That evidence consists of affidavits from two local environmental officials and inspection reports and photographs from a state environmental official, reporting and depicting leaking drums and construction debris on TOCON's property, and mismanagement of asbestos removal in the course of TOCON's demolition of buildings at the site.  (*Id.* at 3, 44-71.)  That evidence provides even further support for Plaintiffs' claims against TOCON.

A defendant seeking removal "bears a 'heavy burden to establish fraudulent joinder.' " *Van Swol v. ISG Burns Harbor, LLC*, 491 F. Supp. 2d 807, 813 (N.D. Ind. 2007) (citing *Gottleib v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993); *Poulous v. Naas Foods, Inc.*, 959 F.2d

69, 73 (7th Cir. 1992)).   This issue was thoroughly discussed by Judge Robert L. Miller in

*McDaniel v. Synthes, Inc.*, 2007 WL 3232186 (N.D. Ind. Oct. 29, 2007):

> "The defendant must show that, after resolving all issues of fact *and* law in favor
> of the plaintiff, the plaintiff cannot establish a cause of action against the in-state
> defendant."  [*Poulous*, 959 F.2d at 73].   Essentially, the court must find that there
> is no reasonable possibility that a state court would rule against the non-diverse
> defendant.  *Id.; see also Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)
> ("If there is even a possibility that a state court would find that the complaint
> states a cause of action against any one of the resident defendants, the federal
> court must find that joinder was proper and remand the case to state court.")
> (citation omitted).  The scope of the court's inquiry in determining fraudulent
> joinder is "extremely narrow," permitting only a summary inquiry to determine
> whether the plaintiff is precluded from recovering against the in-state defendant.
> *See Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 847 (S.D. Ill. 2006) (noting
> that the test for fraudulent joinder "is a less searching test than the test under Rule
> 12(b)(6). . . .") (citing *Valentine v. Ford Motor Co.*, 2003 WL 23220758, at *4
> (S.D. Ind. Nov. 21, 2003)).

*Id.* at *2 (original emphasis).

JCI cannot come close to meeting its heavy burden of establishing that TOCON was

fraudulently joined as a party to this action.   JCI's own emails to IDEM would alone be

sufficient to support claims against TOCON.   Moreover, Dr. Keramida's deposition testimony,

on which JCI solely relies, does *not* show the *absence* of evidence to support Plaintiffs' claims

against TOCON, and her affidavit provides ample evidence to *support* those claims.   And it

should again be noted that JCI itself has twice alleged, under the requirements of Rule 11, that

TOCON's conduct is the cause of Plaintiffs' injuries.  (DE 8 at p. 5; DE 10 at p. 45.)   Because

JCI cannot show that TOCON was fraudulently joined, diversity jurisdiction under 28 U.S.C. §

1332(a)(1) does not exist.

### III.   REQUEST FOR ATTORNEY FEES

The Court should award fees under 28 U.S.C. § 1447(c).   JCI has sued TOCON in this

litigation making essentially the same allegations as Plaintiffs—that Plaintiffs' injuries were

caused by TOCON.  As recently as September 19, 2014, JCI's Director of Environmental Affairs reported the presence of "leaking drums" on the former JCI site.  JCI's pleadings and conduct *prior to removal* indicate JCI's belief that TOCON has caused or contributed to contamination and bears at least some, if not all, responsibility for Plaintiffs' claims.

But having played its hand in state court and lost, and facing an imminent hearing on class certification, JCI has engaged the gears of this federal court by arguing, in part, that TOCON is not a significant defendant in this litigation.  JCI has argued further that Plaintiffs could not conceivably state a claim against TOCON and therefore fraudulently joined TOCON to avoid federal diversity jurisdiction.  JCI simply cannot reconcile its own pleadings and conduct with its current position, and a litigant should not be permitted to take with the left hand what it gives with the right.  Moreover, the delay caused by JCI's removal is not insignificant. While § 1447(c)'s fee provision is properly construed to avoid punishing parties who remove on an "objectively reasonable" basis, Plaintiffs respectfully submit that JCI's arguments in support of removal, under both CAFA and fraudulent joinder, definitely fail this generous test.

## IV.    CONCLUSION

For the foregoing reasons, the Court should remand this action back to the Elkhart County Circuit Court.

Respectfully submitted,

*/s/ Thomas A. Barnard*
Thomas A. Barnard, Attorney No. 4011-49
Rodney L. Michael, Jr., Attorney No. 23681-49
Melissa A. Gardner, Attorney No. 29920-49
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Telephone:  317.713.3500
Facsimile:   317.713.3699

John D. Ulmer, Attorney No. 921-20
Yoder, Ainlay, Ulmer, & Buckingham, LLP
130 North Main Street
Goshen, Indiana 46527
Telephone:  574.533.1171

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.  Parties may access this filing through the Court's system.

The undersigned hereby certifies that on July 10, 2015, a copy of the foregoing was mailed by U.S. Mail, to:

TOCON Holdings LLC
c/o Tony Adkins
5722 Pond Ridge Circle
Georgetown, IN 47122

*/s/ Thomas A. Barnard*

12409566.3

26