UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| AMOS HOSTETLER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-CV-226 JD |
| | ) | |
| JOHNSON CONTROLS, INC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is an environmental action over contamination that was released at a factory and has

since migrated to neighboring properties. The Plaintiffs, five individuals who live in that

neighborhood, seek damages for illnesses (or increased risks of future illness) that they suffered

because of their exposure to the contamination. They also seek an injunction requiring the

contamination to be cleaned up. In addition to asserting claims on their own behalf, they seek

class certification of "liability-related" issues that they assert would be common to potential

claims by others in their neighborhood who have been affected by the same contamination. They

moved to certify a class of everyone who has owned, rented, or occupied property in the area at

any time from 1992 through May 2014.

The Plaintiffs propose to address seven specific issues on a class-wide basis. They do not

contend that those issues would resolve any of the class members' claims in whole, or even

establish the defendants' liability; they concede that once the class issues have been resolved,

individual trials would be necessary to establish, as to each class member, whether the

defendants are liable on any of the claims, whether the class member has been exposed to and

injured by the contamination, and the amount of damages owed for that injury. The Plaintiffs

admit that, even with the benefit of the initial class proceedings, each of those separate trials

would be complex and costly, requiring expert testimony to establish both the individuals' exposure to contamination and a causal link between that exposure and the individuals' injuries. However, the Plaintiffs contend that the issues they have identified can be resolved on a class-wide basis, and that doing so will facilitate and narrow the issues to be resolved in the individual trials.

For the reasons discussed below, the Court finds that the Plaintiffs have failed to meet their burden of showing that the issues in question are appropriate for class certification under the circumstances of this case. As to several issues, the Plaintiffs have defined the class so broadly, in an attempt to sweep in as many class members as possible, that the issues they propose for certification are not common to the members of that class. Other issues they propose are either insubstantial and undisputed, or would stop short of resolving the relevant issue and would have to be revisited on a class-member-by-class-member basis in the subsequent proceedings. Those issues thus would not drive the resolution of any claims or meaningfully simplify the individual trials. Therefore, the Court denies the motion for class certification.

## I. FACTUAL BACKGROUND

Defendant Johnson Controls, Inc. operated a manufacturing facility in Goshen, Indiana for many years. The facility's operations included the use of chemicals including trichloroethylene ("TCE"), trichloroethane, and other hazardous chemicals. Over time, TCE and other chemicals were occasionally spilled or otherwise released into the ground. In 1991, Johnson Controls discovered chlorinated solvent contamination, including TCE and other volatile organic compounds, in the soil at its site. It then began investigating whether the contamination spread off-site, and in 1992, it discovered that a plume of contamination had migrated into the groundwater towards the west and northwest of the site. A number of homes in that area were using wells, so Johnson Controls alerted the residents of the contamination and

arranged for them to be connected to municipal water. Johnson Controls also enrolled in the Indiana Department of Environmental Management's ("IDEM") Voluntary Remediation Program. The Plaintiffs argue that Johnson Controls' remediation efforts under that program have been meager and ineffectual, though, allowing contamination to remain.

In 2003, IDEM notified Johnson Controls that it needed to evaluate whether vapors from the groundwater contamination could be migrating up through the soil and into the indoor air of structures in the area. Vapor intrusion can occur when TCE in the groundwater volatizes into vapors, which can travel up through the soil to any structures on the property. The vapors can then enter the structures through cracks in the foundation or through crawl spaces, for example, allowing it to reach the indoor air and present a hazard to the occupants. Contamination in the ground can also enter underground utility lines, such as sewers, where the vapors can travel without diluting to the same extent as if they were traveling through the soil. Those types of "preferential pathways" can allow vapor contamination to reach farther distances, and can also allow vapors to enter residences, depending on the utilities' connections to the residences. In 2011, Johnson Controls began sampling structures in the area for vapor intrusion. The results showed that TCE vapors exceeding IDEM screening levels were present in 15 of the residences. Johnson Controls thus installed vapor mitigation systems in each of those residences to restore the air quality to acceptable levels.

In the meantime, Johnson Controls had sold the property to defendant Tocon Holdings, LLC, in 2007, after ceasing its operations at the site. Tocon conducted manufacturing operations at the site for only a brief time. In late 2013, Tocon began demolishing the buildings on the property. However, it failed to remove the asbestos from the buildings before doing so. Tests conducted on the debris piles in February 2016 revealed the presence of asbestos. The

Environmental Protection Agency secured the site and covered the asbestos piles by March 2016, after which it removed all of the asbestos-containing material. Prior to then, however, friable asbestos had been sitting exposed and could have become airborne and been blown in the wind.

The Plaintiffs in this case are five individuals who live in the neighborhood immediately adjacent to the former Johnson Controls site to its west. The Plaintiffs allege that they have been harmed by exposure to contamination that originated from the site. One alleges that he suffers from kidney failure as a result of the contamination, and each of them allege that they face an increased risk of serious diseases, including cancer, due to the contamination. They also allege that the contamination has caused emotional distress. They filed this suit asserting claims under Indiana law, including claims for trespass, nuisance, negligence, negligent infliction of emotional distress, and an environmental legal action claim. They seek compensatory damages for their past and prospective injuries, punitive damages, and attorneys' fees and costs. They also seek an injunction requiring Johnson Controls to remediate all of the contamination, including the contamination at the site and the contamination that has migrated into the neighborhood.

In addition to their own claims, the Plaintiffs wish to litigate claims on behalf of all other individuals who have been affected by the contamination. They seek to certify a class of all persons who have owned, rented, or occupied property within the class area at any time between 1992 (when TCE contamination was first discovered off-site) and May 30, 2014 (when they filed suit). The class area consists of a cloud drawn on a map, reflecting the geographic area that the Plaintiffs' retained expert asserts has been impacted by contamination from the site, as shown here:



The Johnson Controls site is located towards the east of the cloud, outlined in red. Directly to the west and south of the site are residential neighborhoods, and toward the western edge of the cloud is Goshen High School. North of the high school are a number of additional residences. The class area includes 115 residential and 13 commercial properties.

The Plaintiffs do not claim that this cloud reflects the scope of contaminated groundwater. The area of groundwater contamination, at least per Johnson Controls' expert (which the Plaintiffs' expert disputes in part, particularly as to the western edge), is shown here:



The Plaintiffs argue that the area of contamination is not limited to the groundwater plume. They argue that the concentration of TCE in the groundwater makes it likely that the vapors are able to migrate through the soil to properties outside the plume. They also argue that the various utility lines in the area, including storm and sanitary sewers and gas and water lines, can serve as preferential pathways and allow the contamination to reach even greater distances, thus creating a larger area of contamination.

Within their proposed class, the Plaintiffs propose to address issues relating to the TCE contamination as well as the later asbestos exposure, and they have proposed seven specific issues for class-wide resolution. The Plaintiffs further contemplate that, once those class issues have been resolved, each class member would have to assert their own claims individually and, building on the issues resolved in the class proceeding, would have to prove their own entitlement to relief in individual trials. They have now moved for class certification, and that motion and other ancillary motions have been fully briefed.

## II. EVIDENTIARY MOTIONS

Before addressing the motion for class certification, a number of evidentiary motions need to be addressed. First, Johnson Controls filed a motion to strike certain opinions offered by the Plaintiffs' expert, Dr. Keramida. The Seventh Circuit has held that district courts should resolve any objections to expert testimony that is "critical to class certification" before addressing the merits of a motion for class certification. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012). "Critical" means "important to an issue decisive for the motion for class certification." *Id.* Johnson Controls first moves to strike Dr. Keramida's opinion that "there is (or was) a 'completed' vapor intrusion pathway for all 128 current and former structures in the Class Area." [DE 313-1 p. 9]. That opinion is not critical to the motion for class certification for a simple reason: the Plaintiffs do not offer or rely on that

opinion in support of their motion. To the contrary, they expressly disclaim such an opinion at this stage. [DE 322 p. 11–12 ("Dr. Keramida does not intend to testify that a 'completed pathway' exists today at every home within the Class Area.")]. As discussed in more detail below, all the Plaintiffs argue at this stage is that contamination exists somewhere, in some amount, below the ground in the properties within the class area. Since the opinion that Johnson Controls moved to strike is not one that the Plaintiffs offered in support of certification, the Court need not rule on the merits of the motion.[1]

Johnson Controls also moves to strike Dr. Keramida's opinion that asbestos contamination reached the entire class area. In support of that opinion, Dr. Keramida noted that buildings at the Johnson Controls site were demolished while still containing asbestos, and that the debris was found to contain asbestos. She then had a survey taken of 15 residents of properties within the class area—though to be more precise, properties in portions of the class area nearest to the site [DE 303-10 p. 2]—and those residents reported observing dust on their properties during construction activities at the site. Dr. Keramida then concluded that because asbestos was present in debris on the site, and nearby residents reported having dust on their property, asbestos had affected each of the properties within the class area. [DE 303 p. 26–28].

Under Rule 702, an expert witness must be qualified, the testimony must be "the product of reliable principles and methods," and the expert must "reliably appl[y] the principles and methods to the facts of the case." Fed. R. Evid. 702. A court has a gatekeeping role to ensure that expert testimony meets those criteria. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579

---

[1] Johnson Controls' motion sometimes uses more general language in describing the opinion it seeks to strike, but it identifies the "crux" of Dr. Keramida's opinion as being that a completed vapor intrusion pathway exists for each property in the area and focuses its arguments on that opinion, which is not one the Plaintiffs have actually offered.

(1993); *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834–35 (7th Cir. 2015). In conducting

that analysis, a court is not concerned with the correctness of the expert's conclusions, but only

"the soundness and care with which the expert arrived at her opinion." *Textron*, 807 F.3d at 834.

Here, Dr. Keramida does not identify any methodology that she was employing in order

to conclude, based on the presence of asbestos in debris at the site and reports of dust nearby,

that asbestos reached the whole class area. She does not cite any studies, and she conducted no

testing or analysis, as to how much asbestos could be expected to become airborne through these

sorts of activities or how far it could be expected to travel. Moreover, during her deposition, Dr.

Keramida stated that she had not actually relied on the survey reports of dust in reaching her

conclusion. [DE 314-7 p. 151]. The only remaining support in her affidavit for her conclusion is

thus that asbestos was present in debris at the site, and asbestos has the ability to become

airborne. Dr. Keramida did not cite any methodology connecting those facts to her conclusion,

and an expert's own say-so does not suffice. *Gen'l Elec. v. Joiner*, 522 U.S. 136, 138 (1997)

("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit

opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."). In

defense of Dr. Keramida's opinion, the Plaintiffs argue that she relied on "her extensive

experience in Goshen wind patterns," but that sort of vague reference to an expert's experience

does nothing to bridge the analytical gap. Accordingly, the Court grants the motion to strike Dr.

Keramida's opinion that the class area was also affected by asbestos.

The Plaintiffs have filed three motions to strike. One seeks to strike a declaration by

defense counsel's paralegal, who they characterize as offering expert opinions. According to her

declaration, the paralegal reviewed the list of putative class members that the Plaintiffs submitted

in support of their motion for class certification, and she counted the number of individuals who,

according to the information in the list, appeared to still be associated with the properties at the end of the class period. She concluded that less than a third of those individuals still owned or occupied property in the class area by the end of the class period. The Plaintiffs argue that this is undisclosed expert testimony and that it does not satisfy Rule 702.

The Plaintiffs' characterization of this declaration as "expert" testimony is difficult to justify. The paralegal does not purport to rely on "scientific, technical, or other specialized knowledge," as is required to implicate Rule 702. *See* Fed. R. Evid. 701(c), 702(a). Her declaration serves more of a demonstrative purpose, as it entailed counting the number of people fitting certain criteria from a list on which the Plaintiffs rely. In any event, the motion to strike is inconsequential, as the Court need not rely on the declaration for the proposition it supports: that many of the putative class members no longer have any connection to the class area. As discussed below, the Plaintiffs' own complaint emphasizes that "many" putative class members have since moved away and no longer own property in the neighborhood. [DE 4 ¶ 107–08]. Other materials the Plaintiffs have submitted—including the list upon which the paralegal relied—illustrate that as well. More importantly, the Plaintiffs bear the burden of proving that class certification is proper, and though they criticize the reliability of this declaration, they have not submitted any evidence attempting to demonstrate that the putative class members do still have a connection to the area that would give them an interest in injunctive relief. Thus, the Court denies the motion to strike this declaration.

Next, the Plaintiffs filed two motions to strike the opinions and affidavits of Johnson Controls' two retained experts. Again, the Court need not resolve those motions. As discussed below, even accepting the evidence the Plaintiffs offer in support of class certification, they have not met their burden of establishing that any of the issues in question are appropriate for class

certification. Thus, the Court need not reach the evidence that Johnson Controls has submitted to contradict the Plaintiffs' assertions. And for that same reason, the Court denies the Plaintiffs' motion for an evidentiary hearing, as no disputed issues of fact would affect the outcome of the motion for class certification.

## III. DISCUSSION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "'A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites' for class certification have been met." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015) (quoting *CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011)).

A party seeking class certification must first satisfy each of the requirements of Rule 23(a), showing that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The party must then satisfy at least one of the provisions of Rule 23(b), which are met if:

> (1) prosecuting separate actions . . . would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (3) the court finds that the question of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b). Certification under Rule 23(b)(3) requires a court to provide notice to the class and an opportunity for class members to opt out, but Rules 23(b)(1) and (b)(2) do not, as those rules are premised on the idea that relief sought is indivisible and would inherently apply to all class members. *Wal-Mart*, 564 U.S. at 360–62; Fed. R. Civ. P. 23(c)(2).

These provisions do not "set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule" by submitting evidence to satisfy each provision. *Wal-Mart*, 564 U.S. at 350; *see also Comcast*, 569 U.S. at 33. "The party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Bell*, 800 F.3d at 373. In considering that evidence, a court is not concerned with whether it shows that the class is likely to succeed on the merits, but only whether it shows that the requirements for class certification have been met. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013); *Bell*, 800 F.3d at 377.

Some of these provisions warrant further explanation. Rule 23(a) requires a party to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single common question will do." *Wal-Mart*, 564 U.S. at 359 (internal quotation and alterations omitted). As the Supreme Court has acknowledged, though, "any competently crafted class complaint literally raises common 'questions.'" *Id.* at 349. Thus, the question must not only be common, it "must be of such a nature that it is capable of classwide resolution." *Id.*at 350. In other words, "[w]hat matters to class certification is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common *answers*

apt to drive the resolution of the litigation." *Id.* Another way of evaluating that requirement is to consider whether the question can be resolved with evidence that is common to the class as a whole: "If . . . the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Messner*, 669 F.3d at 815; *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

Rule 23(b)(3)'s predominance requirement is similar, but more demanding, and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[2] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson*, 136 S. Ct. at 1045 (internal quotation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages . . . ." *Id.* Rule 23(b)(3) also contains a superiority requirement, which entails weighing the benefits and efficiencies to be gained through certification with the costs and burdens of a class action, as well as other factors like the class members' interests in individually controlling the prosecution of their claims. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663–64 (7th Cir. 2015). These requirements are meant to cover cases "in which a class action would achieve

---

[2] The Seventh Circuit has not expressly addressed the role of predominance in issue-only classes, and there is some disagreement among the circuits on the issue. However, the view that is most consistent with the Seventh Circuit's holdings is that, in an issue-only class, the scope of the predominance inquiry is narrowed to focus on whether common questions predominate within the issues proposed for certification, as opposed to the claim as a whole. *See Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 411–12 (6th Cir. 2018).

economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

Even when a claim as a whole cannot be resolved on a class-wide basis, Rule 23 allows an action to be "brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4); *see also Bell*, 800 F.3d at 379 ("The fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class."). As the Seventh Circuit has described it, this provision can be used to "carv[e] at the joints of the parties' dispute":

> If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, clamant-specific issues to individual follow-on proceedings.

*Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003); *accord McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, at 491 (7th Cir. 2012). Thus, even if issues like causation and damages might require individual hearings for each claimant, a common issue that is central to each class member's claim—like whether the defendant's product is defective in a products liability case, or whether a debt-collection letter was misleading in a Fair Debt Collection Practices Act case—can be certified and resolved in a class-wide proceeding. *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 875–76 (7th Cir. 2015); *Pella Corp v. Saltzman*, 606 F.3d 391, 394–95 (7th Cir. 2010); *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."). Once those common issues have been

addressed, any remaining elements of liability and damages can be resolved in individual trials for each class member.

Proceeding in that manner can require caution, however. Under the Seventh Amendment, "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. In certifying a given issue for class treatment, a court must thus ensure that the issue is severable from the remaining issues and will not need to be re-examined in the subsequent trials. *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("Bifurcation and even finer divisions of lawsuits into separate trials are authorized in federal district courts. . . . However, as we have been at pains to stress recently, the district judge must carve at the joint. . . . [T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."); *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 320 (5th Cir. 1998) ("[I]f separate trial[s] are ordered, the separately tried issues must be distinct and separable from the others."). Even aside from Seventh Amendment concerns, if the class issues are not severable from the individual issues, and would have to be revisited in each individual proceeding, then there is no efficiency to be gained through the class proceeding, and the burdens and expenses of the class action are for naught. *See Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011) (finding that certification was improper where the class issue was "inseverable from other issues that would be left for follow-up proceedings").

Here, the Plaintiffs move to certify a class consisting of all persons who have owned, rented, or occupied property within the class area at any time between 1992 and May 30, 2014. The Plaintiffs concede that the claims as a whole cannot be resolved on a class-wide basis. However, they seek issue-only certification under Rule 23(c)(4) as to following seven issues:

(1)     Whether JCI and/or Tocon leaked or otherwise released TCE and other chemicals from the Site;

(2)     Whether TCE and other chemicals from the Site have reached the soil, groundwater, and utility lines beneath the homes and properties within the Class Area;

(3)     Whether JCI and/or Tocon unlawfully demolished the buildings on the Site without adequate asbestos abatement, and moved piles of debris on the Site, causing airborne asbestos contamination to be released from the Site;

(4)     Whether asbestos contamination emanating from the Site has reached properties within the Class Area;

(5)     Whether the subsurface contamination emanating from the Site is capable of being transported through the Class Area in and/or adjacent to municipal lines, including sewers;

(6)     Whether, and to what extent, environmental remediation is needed as a result of the contamination; and

(7)     Whether the Defendants acted with reckless indifference toward the health and wellbeing of the Class, the Neighborhood, and the environment.

[DE 302 p. 10–11]. The Plaintiffs contemplate that after those issues are resolved on a class-wide basis, each individual class member will then have to assert their own claims and prove the remaining elements of liability,[3] in addition to causation and damages, in separate trials.

It is also useful to explore what issues the Plaintiffs concede *will not* be resolved in the class, and will have to be resolved individually at each trial in the second phase. The Plaintiffs do not seek to establish that Johnson Controls was negligent. [DE 319 p. 13]. Nor do the Plaintiffs seek to establish that any individual plaintiff was ever exposed to contamination or that any contamination ever entered any of the structures in the class area. [DE 322 p. 11–12]. They concede that the second phase will require a "property-by-property estimate of the dose and

---

[3] Curiously, the Plaintiffs' briefs do not acknowledge the claims they assert in this action (other than a passing reference to their environmental legal action claim) or the elements of those claims, thus missing out on their opportunity to analyze how these issues would drive the resolution of those claims.

duration of vapor exposure," *id.* p. 16 n.16, and that each class member will have to individually prove that a completed pathway existed for vapor to enter their home and that the dose and duration of their exposure was sufficient to cause their alleged injuries, *id.* p. 12.

Thus, each individual trial in the second phase will require the presentation of evidence of Johnson Controls' conduct, and of each individual plaintiff's exposure to contamination and the amount and duration of that exposure. Each individual would then need to present medical evidence to establish general and specific causation for their injuries. [DE 302 p. 29]. The Plaintiffs note that these latter issues "would be the most expensive and time-consuming aspect of this case." *Id.* The need for those sorts of individualized inquiries in a later stage does not preclude class certification. *McMahon*, 807 F.3d at 875; *McReynolds*, 672 F.3d at 490–91. It is important to understand the role of the class issues relative to the resolution of the claims as a whole, though, in order to evaluate the utility of the class and the ability of the common issues to drive the resolution of the claims.

Another point that is worth noting at the outset is that this is not the type of case that would not exist absent the ability to prosecute it as a class. The Seventh Circuit has noted that when the recovery in any individual case would be small, the alternative to a class action would not be many separate suits, but no suits at all. *Butler*, 727 F.3d at 801; *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."). Class certification is particularly important in those cases, as denying class certification is equivalent to denying a recovery to the class members. *Butler*, 727 F.3d at 801 (noting that without class actions, "defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual

suits"). *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 776 (7th Cir. 2013) ("[W]here it is class treatment or nothing, the district court must carefully explore the possible ways of overcoming problems in calculating individual damages."); *see also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.")

This is not that sort of action. First, the Plaintiffs concede that, even with any benefits that might be gained through a class action, costly individual trials will be necessary for any class member to recover. Second, the damages the Plaintiffs seek are substantial. They seek damages for physical, mental, and emotional harm, and allege that they have suffered from serious health conditions and been placed at an increased risk of cancer and other diseases. They also seek punitive damages and attorneys' fees and costs. Those amounts of damages would likely allow these claims to be brought individually, or at least in groups of individual claims. *See Parko v. Shell Oil Co.*, 739 F.3d 1083, 1086 (7th Cir. 2014) ("[T]his doesn't appear to be one of those small-claims suits that as a practical matter can proceed only as a class action (e.g. overcharges of $5.50 for rental cars). The damages may not be huge, but may well be sizable enough for individual (or joined) suits to be a feasible alternative to a class action.").

With that understanding of the legal framework and the scope of the issues the Plaintiffs propose for certification and their context within this case, the Court proceeds to consider whether each issue is appropriate for certification. In doing so, the Court focuses primarily on Rule 23(a)'s commonality element and the predominance and superiority requirements in Rule 23(b)(3), as those are decisive here.

**A.      Asbestos**

The Court begins with the issues relating to asbestos, as those can be easily trimmed away. First, the Court struck Dr. Keramida's opinion as to the scope of asbestos contamination, so these issues fail at the outset for lack of evidentiary support. Even accepting Dr. Keramida's opinion, though, certification of these issues would be unwarranted given the lack of a meaningful nexus between the class and the alleged asbestos exposure. The Plaintiffs allege that the asbestos exposure first arose when buildings containing asbestos were demolished beginning in 2013, and that the asbestos then spread by being blown through the air in all directions by the wind. But the class is defined as all owners, renters, or occupants of any property in the area since 1992 (when the TCE was discovered off-site), and its geographic scope is defined in relation to an area of underground contamination of TCE, which spread primarily to the west of the site. The class definition thus produces little overlap between the class and the alleged asbestos exposure. As if an afterthought, the Plaintiffs merely appended the alleged asbestos exposure to a class that is defined solely by relation to the TCE contamination, rather than making any effort to define the class in relation to the class of people who were actually affected by asbestos.

The Plaintiffs attempt to explain away the geographic discrepancy by noting that they do not claim that the area affected by asbestos is the *same* as the area affected by TCE, only that it *includes* the area affected by TCE. They offer no justification, though, for why a class should be certified that they concede encompasses only a portion of the area allegedly affected by asbestos. *See* Manual for Complex Litigation § 21.222 ("The court should also consider whether the class definition captures all members necessary for efficient and fair resolution of common questions of fact and law in a single proceeding. If the definition fails to include a substantial number of

persons with claims similar to those of the class members, the definition of the class may be questionable.").

In addition, the Plaintiffs make no attempt to explain the divergent time periods for the respective claims. The Plaintiffs' expert stated that asbestos exposure began when buildings containing asbestos were demolished beginning in "late 2013." [DE 319-8 p. 21; DE 322-12 p. 139; *see also* DE 302-19]. The Plaintiffs further assert that the asbestos exposure continued for about two years until the asbestos was remediated in 2016. Yet the class period begins in 1992 and continues only through May 30, 2014. The alleged asbestos exposure thus occurred over only about the last six months of the decades-long class period. And conversely, the class period includes only a fraction of the time period of the alleged exposure to asbestos.

Given this mismatch between the class and the alleged asbestos exposure, no question relating to asbestos is common to the class the Plaintiffs have defined. Though it might theoretically be possible that some class could be appropriate to address the alleged asbestos exposure, it certainly is not this class, and the Plaintiffs have not suggested or offered evidentiary support for any alternatives. Therefore, certification is denied as to Issues 3 and 4.

**B.     Injunctive Relief**

The Plaintiffs' motion also implicates issues relating to injunctive relief. One of their proposed issues for certification addresses what environmental remediation is needed, and they also seek certification under Rules 23(b)(1) and (b)(2), which address requests for declaratory or injunctive relief. Again, however, the class that the Plaintiffs propose to certify does not bear a relation to a request for injunctive relief, so class certification is not warranted on those grounds.

Recall that the class includes everyone who has owned, rented, or occupied property in the area for any length of time since 1992. Undoubtedly, many of those putative class members have since moved away from or no longer own or rent property in the area. The Plaintiffs

themselves emphasize that point in their complaint. [DE 4 ¶ 107–08 (stating that "many" putative class members have moved out of the neighborhood or sold their homes)]. The Plaintiffs also indicate that about a third of the residential properties are rental properties. [DE 302 p. 9]. A number of those have turned over a dozen or more times over the class period, and most of the remaining properties have turned over at least once. [*See* DE 302-22]. The Plaintiffs also indicate that about ten percent of the homes in the class area were demolished at some point during the class period. [DE 302 p. 9]. All of that shows that many—and likely most—putative class members lack any current tie to the neighborhood. Those individuals lack any interest in, and would not benefit from, injunctive relief. Issues relating to injunctive relief are thus not common to the class, and for the same reason, certification under Rule 23(b)(1) or (b)(2) is unwarranted.

In arguing to the contrary, the Plaintiffs argue that certification under Rule 23(b)(2) is appropriate because Johnson Controls' actions (its release of contaminants) applied generally to the class. That argument addresses only the first part of the rule, though. Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate *respecting the class as a whole*." Fed. R. Civ. P. 23(b)(2) (emphasis added). As the Seventh Circuit has emphasized, "[t]he final clause is important: The injunctive or declaratory relief sought must be 'final' to 'the class as a whole.'" *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 498–99 (7th Cir. 2012).

As the Supreme Court held in *Wal-Mart*, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. The Court held that certification under Rule 23(b)(2) was improper, in part because "about half the members of the class," meaning those who were no longer employed by

the defendant, "have no claim for injunctive or declaratory relief at all." *Id.* at 365.[4] Likewise here, many members of the class have no current connection to the class area, so certification under Rule 23(b)(2) is unwarranted. The Plaintiffs argue in response that not all members of the class need to have been injured in order to justify certification under Rule 23(b)(2).[5] That is true, but beside the point. The problem here is not that some class members may not have been injured, but that many of them do not stand to benefit from and would not be affected by any injunction. *Id.* at 361–62 (noting that "the relief sought [under rule 23(b)(2)] must perforce affect the *entire class* at once" (emphasis added)).

Even aside from the substantial overbreadth of the class definition relative to this issue, the Plaintiffs have made little effort to establish that injunctive relief can be resolved on a class-wide basis. In fact, all the Plaintiffs' expert identifies in her affidavit are the areas that should be remediated. She opined that those areas include the soils, the shallow groundwater, deep groundwater, and utility lines.[6] [DE 303 p. 5]. That fails to establish, though, that the remediation would need to be imposed through a single, indivisible class-wide injunction. As Johnson Controls argues, even class members with current ties to the neighborhood might have differing

---

[4] *See also* 2 Newberg on Class Actions § 4:32 (5th ed.) ("The issue often arises in employment cases when plaintiffs seek to certify a class of past and present employees *and* seek injunctive relief for the class. As the injunctive relief would appear to affect only current, and not former, employees, it would not apply to the class as a whole and thus the class would seem to fall without the language of Rule 23(b)(2). Indeed, the Supreme Court's decision in the *Wal-Mart* case appears to foreclose (b)(2) certification on this ground.").

[5] The Supreme court has noted that "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of cases appropriate for certification under Rule 23(b)(2), as an injunction barring the discriminatory policy would benefit all members of the targeted class. *Amchem*, 521 U.S. at 614.

[6] In their reply brief, the Plaintiffs cite in passing to an affidavit Dr. Keramida submitted in the companion *Schmucker* case as to the remediation required to comply with the Resource Conservation and Recovery Act, but that point is waived as undeveloped and for being raised for the first time in a reply.

interests in the types or extent of injunctive relief, based on their location relative to groundwater contamination or if they are at risk only through utility lines, or whether they have experienced indoor vapor intrusion or have had a mitigation system installed, among other possible factors. *See Ebert v. Gen'l Mills, Inc.*, 823 F.3d 472, 481 (8th Cir. 2016) (holding that certification under Rule 23(b)(2) was improper where "[r]emediation efforts on each of the affected properties, should they be awarded, will be unique," since "some class members . . . have received customized [vapor mitigation] systems and some have not, some tested properties evidence the existence of TCE soil vapors at widely varying levels and some did not").

A class certified under Rule 23(b)(2) has no ability to account for differences among the class. As discussed in *Wal-Mart*, "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." 564 U.S. at 360. For that reason, class members in a Rule 23(b)(2) class are not even entitled to notice, and have no ability to opt out if they prefer different relief. *Wal-Mart*, 564 U.S. at 362 (noting that (b)(1) and (b)(2) classes are "mandatory classes: The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action"). Given the potential differences just discussed, the Plaintiffs have not shown that certification on that basis is appropriate here, where injunctive relief could include a range of activities over a large area to address different potential sources of vapor intrusion that affect different properties to different extents. *Gates*, 655 F.3d at 264 ("The disparate factual circumstances of class members may prevent a class from being cohesive and, therefore, make the class unable to be certified under Rule 23(b)(2)." (internal quotation omitted)).

Finally, as to Rule 23(b)(1), which applies when separate actions could establish "incompatible standards of conduct," all the Plaintiffs argue is that, absent a class-wide injunction, Johnson Controls could be ordered in different actions to remediate the property to different target levels. Those orders would not be incompatible, though; Johnson Controls could comply with both at the same time by remediating to the more stringent level.

Perhaps the Plaintiffs could address or cure some of these concerns, but as the party that bears the burden of proof, their present filings have not met that burden. For those reasons, the Court finds that class certification is not warranted relative to injunctive relief. Accordingly, the Court declines to certify Issue 6, and declines to certify a class under Rule 23(b)(1) or (b)(2).

## C.     Whether Johnson Controls Leaked TCE

In Issue 1, the Plaintiffs propose to address "Whether JCI . . . leaked or otherwise released TCE and other chemicals from the Site." Though that question is a common one to the class, it "is really no question at all." *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 801 (7th Cir. 2017) (finding that the plaintiffs had not established commonality where there was no actual dispute on the question and the defendant conceded the issue). The answer is "yes": JCI freely admits that it used TCE and that the TCE was released at the site and has migrated off-site.[7] [DE 312 p. 8 ("For many years, JCI has acknowledged in IDEM public filings that the chemicals were released from its Site that reached soil, groundwater, and/or utility lines in the adjacent area as delineated in its numerous filings with IDEM.")]. JCI also admitted as much in its answer in this case. [DE 8 p. 2 (admitting the allegation that "Hazardous chemicals released at the Plant have entered the environment and migrated through the subsurface soil and groundwater into

---

[7] The Plaintiffs attempt to dispute that point by noting that Johnson Controls has not admitted "liability." The existence of contamination does not itself give rise to liability, though, *see Parko*, 739 F.3d at 1086, and Johnson Controls admits the former but not the latter. In any event, this issue does not seek to establish "liability," only that TCE was leaked or released.

Plaintiffs' neighborhood and under the Goshen High School . . . ."), ¶ 25 ("JCI admits that TCE was occasionally spilled at the Plant."), ¶¶ 26–28 (admitting that JCI spilled 20 gallons of TCE in 1986 and 50 gallons in 1987)]. There is no reason to believe it would not do the same in any individual action. In fact, Johnson Controls' opposition to the motion on this basis could judicially estop it from taking an opposite position in future proceedings, *see Birchmeier v. Caribbean Cruise Line, Inc.*, No. 17-1626, 2018 WL 3545146, at *4 (7th Cir. July 24, 2018), which would accomplish the same ends as certifying a class on this issue.

Issue certification is generally only warranted when resolving the issue on a class-wide basis will meaningfully facilitate or simplify the resolution of the remaining issues. *Wal-Mart*, 564 U.S. at 351 (stating that what matters to class certification is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation"); *Parko*, 739 F.3d at 1085 ("If resolving a common issue will not greatly simplify the litigation to judgment or settlement of claims of hundred[s] or thousands of claimants, the complications, the unwieldiness, the delay, and the danger that class treatment would expose the defendant or defendants to settlement-forcing risk are not costs worth incurring."); *Gates*, 655 F.3d at 273 (stating that when certifying an issue-only class, the court should "explain how class resolution of the issues(s) will fairly and efficiently advance the resolution of class members' claims, including resolution of remaining issues"); *see* Fed. R. Civ. P. 23(c)(4) (stating that a class can be certified as to particular issues "[w]hen appropriate"). As this particular issue is narrow and unlikely (and unable) to be disputed in any individual actions, the Plaintiffs have not identified any efficiencies that would be gained by first proceeding through a class action on that issue.

Another way of framing that same problem is through Rule 23(b)(3)'s superiority requirement. If little can be gained by resolving this issue in a separate class-wide proceeding,

then a class action, with all of its attendant burdens, would not be superior to addressing that issue in the individual actions. *See Martin*, 896 F.3d at 413 ("Rule 23(b)(3)'s superiority requirement ensures that courts will not rely on issue certification where there exist only minor or insignificant common questions, but instead where the common questions render issue certification the superior method of resolution."). Also, the Plaintiffs do not seek certification on the issue of Johnson Controls' negligence, so the course of Johnson Controls' conduct will inevitably have to be explored in each of the individual actions anyway. Conducting a class action merely to allow those subsequent juries to be instructed that Johnson Controls leaked TCE—a fact that could be established through admission or by Johnson Controls' own public statements—would not meaningfully facilitate those individual actions. Thus, even assuming this issue presents a common question, a class action is not a superior method of resolving that question, so the class fails Rule 23(b)(3). Accordingly, the Court declines to certify a class on Issue 1.

**D.     Geographic Scope of Contamination**

The Plaintiffs next seek certification as to the geographic scope of the contamination. Specifically, Issue 2 proposes to address "Whether TCE and other chemicals from the Site have reached the soil, groundwater, and utility lines beneath the homes and properties within the Class Area." It is important to note at the outset the limited scope of this issue. The Plaintiffs do not propose to address on a class-wide basis whether vapors have actually entered any structures in the class area, or where or in what amount contamination is present at any of the properties. They concede that those matters would have to be resolved on a property-by-property basis in individual trials. Rather, all they seek to establish through this issue is that contamination is present somewhere below-ground, in some amount, within the property lines of the properties in the class area.

Thus limited, this issue would not aid the resolution of the class members' claims; to the contrary, it would have to be re-examined by each of the second-phase juries. As a result of the verdict in the class proceeding, the jury in each second-phase proceeding could possibly be instructed that some contamination has existed, at some time, somewhere below-ground at a given class member's property. But the Plaintiffs' principal theory of injury is that individuals were exposed to toxic vapors in the air inside their homes, causing various illnesses or risks of illness. To determine if Johnson Controls is liable to class members for that contamination, those juries would have to decide *where* within the property the contamination was located—in vapors inside the home? in the soil? the groundwater? the utility lines?—*when* it was there, and in *what amount*. The Plaintiffs do not suggest that they can offer common answers to any of those questions, or that the verdict in the class-wide proceeding would provide the basis to answer those questions.

For example, the parties agree that the dilution rates for vapors emanating from the groundwater can differ substantially from vapors in preferential pathways like utility lines. Assuming a pathway for vapor intrusion exists, a small amount of vapor in a utility line could enter a home in greater concentrations than a large amount of vapor in the groundwater, which becomes diluted as it migrates upward through the soil. [*See* DE 303 p. 23 (noting that vapor in a preferential pathway will "migrate through it entering a building a greater distance and at a greater mass than if its migration was only through the sandy soils and its intrusion into the building was only through cracks in foundations and walls"); DE 314-24 p. 7 (discussing varying attenuation factors for different locations of contamination)]. The location and concentration of contamination within a property is thus critical to determining the extent of any vapor intrusion. But the class issue would not provide insight into those factors, meaning the presence of

contamination would need to be revisited in the second-phase trials. Thus, in the Seventh Circuit's words, this issue fails to carve at the joint of the Plaintiffs' claims.

Those factors fundamentally distinguish this case from *Mejdrech*, on which the Plaintiffs heavily rely. In *Mejdrech*, the plaintiffs sought damages for the reduction in their property values caused by the release of TCE into the groundwater, thus affecting particularly those properties with wells that drew water from contaminated groundwater. 319 F.3d at 911–12. The Seventh Circuit affirmed class certification as to whether the defendant leaked TCE and the scope of the contamination. *Id.* at 911–12. It noted that once the scope of contamination was established in a class proceeding, the damages from that contamination could be resolved in subsequent, individual proceedings, based on factors like whether each property had a well. *Id.* In each of those subsequent proceedings, though, the existence of contamination could be taken as given; if the wells were drawing from contaminated groundwater, they would be unusable, and the remaining question would be what effect that had on the property value. In its subsequent opinion in *Parko*, the Seventh Circuit identified that direct connection between the existence of contamination and the plaintiffs' injuries as critical to *Mejdrech's* holding. *Parko*, 739 F.3d at 1087 (distinguishing *Mejdrech* because "in that case . . . the leakage of the noxious solvent was claimed to have contaminated the water supply," which connected the contamination to the plaintiffs' theory of harm based on reduced property values). In *Parko*, however, the plaintiffs did not identify a similar common link between the existence of contamination below their properties and any injury that they suffered, so the court held that class certification was improper. *Id.*

The Plaintiffs here do not identify any direct link between the mere existence of contamination below their properties and their injuries. They allege that they were injured by

exposure to vapors that migrated from the ground into their homes, but they do not contend that the contamination exists in uniform amounts or locations across the area of contamination. Unlike in *Mejdrech*, the existence of contamination could not be taken as a given in the subsequent trials. Rather, each individual claimant would need to essentially start from scratch in proving that and how the vapors actually entered their homes, when they did so, and in what amount. Those factors necessarily overlap with, and would require revisiting, the initial determination that some contamination existed under their property.[8] *See Parko*, 739 F.3d at 1087 (holding that certification was improper where the plaintiffs "presented no theory, let alone credible evidence, of a connection between the leaks [and] property values . . . that would justify a class action on behalf of all the property owners whose properties sit above groundwater that contains an amount of benzene . . . ."); *see also Ebert*, 823 F.3d at 479 (holding that certification was improper for an action "directed at TCE in breathable air, where both its presence and effect differ by property," which would require "a determination as to whether vapor contamination, if any, threatens or exists on each individual property," depending on factors like "whether unique conditions and features of the property create the potential for vapor intrusion, whether (and to what extent) the groundwater beneath a property is contaminated, [and] whether mitigation has occurred at the property").

The only purpose the Plaintiffs identify that could be served by the initial class-wide determination as to the scope of contamination is that, if the jury finds the scope of

---

[8] The Sixth Circuit's recent decision in *Martin* affirmed certification of issues addressing the geographic scope of vapor contamination in a similar case. 896 F.3d 405. However, the court noted that the defendant never argued that exposure might vary within the area of contamination. *Id.* at 414–15. Here, both parties agree that the location and concentration of contamination varies across the class area, and the Plaintiffs concede that a property-by-property analysis will be necessary to determine the presence, dose, and duration of exposure to contamination inside any property. [DE 322 p. 12].

contamination to be smaller than the class area, any class members from properties outside that boundary would lose at that point. This issue could thus only serve to harm class members—if the first jury finds against them on this issue, they lose, but if the jury finds they are within the scope of contamination, they still have to prove that their individual property was actually exposed to vapor intrusion, which would not be made any easier by the first proceeding. In addition, the Plaintiffs insist that the class area and the area of contamination are the same, in which case no claims would be resolved at this stage in that manner. And Johnson Controls, the only party that could benefit from a contrary finding, opposes class certification.

The Plaintiffs also suggest that a class action on this issue is desirable because it would establish a potential exposure to contamination before each individual class member needs to incur the expense of expert medical testimony on general and specific causation, which the Plaintiffs assert will be the most costly aspect of the claims. However, plaintiffs in any individual actions could move to bifurcate trial and discovery to first establish their exposure to contamination before proceeding to determine whether that exposure can and did cause their injury. A class action is not required for bifurcation, so there are other, less burdensome ways to achieve that same efficiency.

Another factor to consider in deciding the superiority of a class action is "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). As the Supreme Court discussed in *Amchem*, "Each plaintiff in an action involving claims for personal injury and death has a significant interest in individually controlling the prosecution of his case . . . ." 521 U.S. at 616 (internal quotation and alteration omitted). Here, a focus of the Plaintiffs' claims is their allegation of personal injuries and the increased risk of future injuries caused by their exposure to carcinogenic and mutagenic

contamination. Those sorts of individualized claims for potentially large sums of money give each individual a strong interest in controlling the prosecution of the case.

This factor is particularly relevant here given the way the Plaintiffs intend to prove the scope of contamination in the class proceeding. Some areas in the class area have not actually been tested for contamination (or have not had positive tests), particularly the neighborhoods in the south, southeast, and northwest portions of the class area. Most of the testing has been focused on the Johnson Controls site and the neighborhood immediately adjacent to its west, which sit above the shallow groundwater plume.[9] To establish that the area of contamination encompasses the whole class area, the Plaintiffs largely rely on inferences from the concentration of contamination at the site and in the groundwater plume and the ability of utility lines to transport that contamination, among other factors, to conclude that contamination has likely reached the whole class area.

For individuals outside the groundwater plume (or anyone, for that matter) who believe that they have been injured by exposure to TCE vapors, though, the best evidence that they have been exposed to TCE in their home would be tests showing that TCE is actually present in their home. But if a jury discounted the inferential evidence on which the Plaintiffs propose to rely in the class proceeding and find that a property has not been subject to contamination, a class member's claim could be foreclosed even if that class member might have been able to offer evidence of TCE in their home in their individual trial.[10] By foregoing that sort of evidence in the

_____

[9] All of the named plaintiffs live, or have lived, within the area of the shallow groundwater plume, which might call into question the typicality of their claims and their adequacy to represent the interests of properties in other parts of the class area that face different evidentiary hurdles as to this issue.

[10] A class action could not depend on that sort of property-by-property evidence, either, as that would destroy the commonality necessary for class certification. *See Tyson*, 136 S. Ct. at 1045; *Messner*, 669 F.3d at 815.

class phase, the class action could thus deprive class members of claims for substantial damages for serious diseases. Those strong individual interests, combined with the limited utility of the class phase on this issue in the first place, weigh heavily against a class action being a superior method of resolving this issue.

For those reasons, the Court finds that certification is not justified on this issue. This issue is not truly severable from the remaining issues that would have to be determined in each of the subsequent individual trials. Certifying this issue could thus implicate the Seventh Amendment's prohibition on re-examining facts found by a jury in a subsequent trial. Similarly, resolving this issue would be of little use in the subsequent trials, and since there is little to be gained, a class action is not a superior method of fairly and efficiently adjudicating this matter. The Court thus declines to certify Issue 2.

**E.      Preferential Pathways**

Next, the Plaintiffs seek certification on the issue of "Whether the subsurface contamination emanating from the Site is capable of being transported through the Class Area in and/or adjacent to municipal utility lines, including sewers." Like Issue 1 (whether Johnson Controls leaked TCE), this is no question at all. There is no dispute that, as a theoretical matter, utility lines are capable of transporting contamination. Both of the parties and their experts agree on that point. Addressing such a generic and undisputed question in a class proceeding would not actually resolve a matter central to the Plaintiffs' claims, though. The real questions are whether contamination or vapors actually traveled through the utility lines, were able to enter any of the class members' homes by those routes, and did so in amounts substantial enough to cause injury.

The Plaintiffs contemplate that those questions would be resolved on a property-by-property basis during each of the second-phase trials. Resolving this issue first in a class proceeding would not make that second phase any less onerous, though. The initial class

proceeding would presumably allow the Court to instruct the second-phase juries that utilities *can* serve as preferential pathways. But that would add little when each of those juries will still need to understand *how* they do so in order to analyze *whether* they did so and allowed contaminants to enter any particular home. To determine whether any of the plaintiffs were exposed to vapors by a utility line, each second-phase jury will have to be told how and under what circumstances vapors can enter and travel through utility lines and encroach into structures. They would then need to consider testing evidence as to whether the utility lines in question actually transported vapors and whether those vapors were able to enter any of the homes. Given all that evidence that will have to be presented anyway, beginning with an instruction that merely says that vapor *can* travel through utility lines (a question that is undisputed to boot) would be of little use. Because there is nothing to be gained by addressing this issue in a class proceeding, class certification on Issue 5 is not appropriate.

## F.    Reckless Indifference

Finally, in Issue 7, the Plaintiffs seek to address "Whether the Defendants acted with reckless indifference toward the health and wellbeing of the Class, the Neighborhood, and the environment." Oddly, however, the Plaintiffs never identify where this issue fits in relation to their claims in this case, which makes it difficult to evaluate the utility of certification of this issue. *See Messner*, 669 F.3d at 815 ("Analysis of predominance under Rule 23(b)(3) begins, of course, with the elements of the underlying cause of action."). In its response, Johnson Controls assumes that this issue would be relevant to a request for punitive damages. If so, this is an odd formulation of the issue, as Indiana courts do not typically define an entitlement to punitive damages in those terms. *See USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 541 (Ind. 1997) ("Punitive damages may be awarded only if there is clear and convincing evidence that defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result

of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing."); *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49, 54 (Ind. Ct. App. 1993) ("Punitive damages may be awarded upon a showing of a 'quasi-criminal' state of mind or willful and wanton misconduct, which, under existing conditions, the actor knows will probably result in injury.").

The Plaintiffs note that the district court in *Greene v. Will* certified this same issue. However, the court did so because the plaintiffs in that case (which involved airborne pollution from a recycling facility) asserted a claim for gross negligence. *Greene v. Will*, No. 3:09-cv-510, 2013 WL 11233976, at *5 (N.D. Ind. Apr. 16, 2013). The Plaintiffs here have not asserted such a claim, and they have conceded that they do not seek class-wide resolution of Johnson Controls' negligence. In addition, the plaintiffs in *Greene* had also requested certification of the issue of whether they were entitled to punitive damages, but the court expressly rejected that issue as inappropriate for class treatment. *Id.* ("[T]he question of punitive damages is tied under Indiana law to the amount of compensatory damages awarded, and will only be able to be dealt with at an appropriate time."). Indeed, the Plaintiffs are putting the cart before the horse in seeking a finding on punitive damages before liability is even established on any underlying claim; the availability of punitive damages is better decided in the same trial as liability.

Moreover, the Plaintiffs have not met their burden of proving that this question can be resolved with evidence common to the class as a whole such that the common questions predominate within this issue. Rule 23's requirements are not a mere pleading standard; a party does not meet those requirements by offering its assurance that it will be able to offer common proof. The Plaintiffs do not mention (except for vaguely and in passing in their reply brief) what common evidence they would offer on this issue, or even identify their theory for prevailing on

this issue. As Johnson Controls argues, this issue could easily splinter into individualized inquiries, as the time periods and geographic areas encompassed by the class involve different actions by Johnson Controls relative to different properties that were affected by contamination to different extents and by different means. For example, when contamination was first discovered in the neighborhood, some of the homes were on well water. Perhaps a jury would find that Johnson Controls was recklessly indifferent to the risk of injury through contaminated drinking water, but not otherwise. Or perhaps Johnson Controls was reckless in failing to timely address the threat of vapor contamination when that was raised some years later. Or perhaps it was reckless in installing vapor remediation systems in only some homes but not others, or in failing to adequately monitor the performance of those systems. Some class members are allegedly at risk of exposure from the groundwater plume, while others are at risk from the utility lines; perhaps Johnson Controls was reckless as to the risk of one group but not the other, or as to those closest to the contamination but not others.

In short, the Plaintiffs have not identified the evidence that would allow this issue to be resolved on a class-wide basis, as opposed to with evidence as to each class member's relation to the contamination and Johnson Controls' knowledge and conduct relative to that class member's exposure. The evidence could differ for each property, or even for class members who resided at the same property at different times. A general finding that Johnson Controls was recklessly indifferent would not assist in determining, in the second phase, which class members would be entitled to punitive damages, and the Plaintiffs have not spelled out how the first phase could be structured so as to delineate which class members would be subject to any finding in the first phase. Therefore, the Court declines to certify Issue 7 for class treatment. And having found that

none of the Plaintiffs' issues are suitable for resolution on a class-wide basis, the Court denies the motion for class certification.

## IV. CONCLUSION

For those reasons, the Court DENIES the Plaintiffs' motion for class certification. [DE 301]. Johnson Controls' motion to strike Dr. Keramida's opinions [DE 313] is GRANTED in part and DENIED in part. The remaining motions to strike [DE 310, 325, 327] and the motion for an evidentiary hearing [DE 323] are DENIED.

SO ORDERED.

ENTERED:  August 15, 2018

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court
