UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMOS HOSTETLER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 3:15-cv-226 JD |
| | ) |
| JOHNSON CONTROLS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Five plaintiffs seek damages from Johnson Controls for contamination that originated at Johnson Controls' former manufacturing facility in Goshen, Indiana. As relevant to this motion, they argue that they were exposed to asbestos that became airborne when buildings at the site were demolished without proper abatement. Johnson Controls moves to exclude three expert opinions relative to that alleged asbestos exposure.

As a brief background, after ceasing operations at the site, Johnson Controls sold the site to a new owner. Around 2012, the new owner began demolishing some of the buildings without first abating all of the asbestos. Demolition activities took place over a couple years, during which debris piles remained in the open at the site. In early 2016, the Plaintiffs' experts took samples of materials at the site and detected asbestos in dozens of samples. The Environmental Protection Agency then secured the site and implemented an expedited removal action. The Plaintiffs argue that by then, they had already been exposed to asbestos that became airborne at the site and blew to their properties. They do not attempt to identify the amount of asbestos to which they were exposed or argue that they have suffered any health effects, but they argue that the exposure itself supports their claims for nuisance, trespass, and infliction of emotional distress. [DE 388 p. 17 n.3, *see also* DE 399].

The Plaintiffs offer three expert reports in support of that theory. They first offer a joint report from two asbestos inspectors, Jeffrey Rechtin and Joseph Giddens, who opine that the buildings were torn down in violation of applicable regulations, that asbestos at the site became airborne, and that asbestos impacted each of the Plaintiffs' properties. They next offer a report from an expert in photo analysis, Kristen Stout, who sets forth a narrative of activities at the site along with her observations of pictures taken at the site. Finally, they offer opinions from a meteorologist, Adam Stepanek, who analyzed the wind patterns in the area and opined that the wind blew in the direction of the Plaintiffs' homes about a quarter of the relevant time.

Johnson Controls moves to exclude each of these opinions under Rule 702. It argues variously that the experts are not qualified, that their opinions are not reliable, or that the opinions would not be helpful to the jury. The Court addresses each expert in turn.

**A.      Standard of Review**

Rule 702 governs the admission of testimony by expert witnesses. Under that rule, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may offer an opinion if the following criteria are met:

>   (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>   (b)     the testimony is based on sufficient facts or data;
>
>   (c)     the testimony is the product of reliable principles and methods; and
>
>   (d)     the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

A court has a gatekeeping role to ensure that expert testimony meets these criteria. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834–35 (7th Cir. 2015). The proponent of the expert testimony bears the burden of

demonstrating that the testimony meets each of those elements. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019). However, a court does not assess "'the ultimate correctness of the expert's conclusions.'" *Textron*, 807 F.3d at 834 (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). Rather, a court must focus "solely on principles and methodology, not on the conclusions they generate." *Schultz*, 721 F.3d at 432 (quoting *Daubert*, 509 U.S. at 595). "So long as the principles and methodology reflect reliable scientific practice, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

**B.     Jeffrey Rechtin and Joseph Giddens**

The Plaintiffs first offer opinions from Jeffrey Rechtin and Joseph Giddens. Mr. Rechtin and Mr. Giddens each hold various licenses related to asbestos inspection, and they have experience in performing asbestos inspections and designing and supervising asbestos abatement projects. They offer three opinions in their joint report. First, that the buildings at the former Johnson Controls site were torn down in violation of applicable regulations. Second, that asbestos fibers at the site became airborne during and after the demolition. And third, that "[e]ach of the five Plaintiffs were impacted by asbestos from the JCI Site when they were exposed to dust and debris contaminated with asbestos fibers that blew into their homes and onto their properties from the former JCI Site." [DE 383-3]. Johnson Controls moves to exclude these opinions in their entirety.

Johnson Controls moves to exclude the first opinion—that the buildings' demotion violated regulations—on the basis that it is an untimely opinion on liability. The Plaintiffs did not disclose these opinions during the discovery period, but only after the Court reopened discovery on the limited topics of exposure and damages. Johnson Controls thus argues that this

opinion is untimely. In response, the Plaintiffs argue that they do not offer this opinion as to liability, but only as to exposure. Thus limited, however, the opinion is not relevant. Mr. Rechtin and Mr. Giddens can discuss how activities at the site may have caused asbestos to become airborne—as they do in connection with their second and third opinions. But to add that, in addition to disturbing the asbestos, the activities violated applicable regulations (like the requirements to file a regulatory form, display signs, and have an inspector present) does not bear on whether the Plaintiffs were exposed or suffered damages.

This opinion does not trace noncompliance with regulations to the likelihood that asbestos was disturbed, either, as might make it relevant to exposure. It does just the opposite, stating that the site is covered with asbestos-containing debris, which proves that regulations were violated. [DE 383-3 p. 10 ("The USEPA stated that 'The demolition went forward with no (or grossly inadequate) abatement of asbestos. As a result, the site is covered with piles of asbestos-containing debris.' These facts alone demonstrate that the buildings were torn down in violation of the applicable standards in Indiana asbestos regulations.")]. Thus framed, this is just an untimely liability opinion, and the Plaintiffs do not argue it should be permitted in that event. The Court thus grants the motion to exclude Mr. Rechtin and Mr. Giddens' Opinion 1.

In their second and third opinions, Mr. Rechtin and Mr. Giddens opine that asbestos at the site became airborne and that it reached each Plaintiff's property. In formulating these opinions, they first visited the site and took samples from the demolition debris. Many of those samples detected asbestos. Mr. Rechtin and Mr. Giddens also reviewed documents reflecting the type and amount of asbestos that was in the buildings, as well as documents reflecting to what extent the asbestos was abated. They then reviewed documents and pictures of the site that reflected the demolition activities that occurred over the years. Based on their knowledge of

asbestos' characteristics and the steps necessary to prevent it from becoming airborne, they evaluated to what extent those activities would cause asbestos that remained in the buildings to be disturbed and become airborne. They concluded that asbestos fibers had become airborne by at least February 2012, and that various activities at the site would have continued causing asbestos to become airborne though February 2016.

To determine whether that asbestos would have reached the Plaintiffs' properties, Mr. Rechtin and Mr. Giddens noted based on their training and experience that asbestos fibers can remain suspended in air for long periods of time, including two to three days in still air, or even longer with air currents. They further noted that asbestos can be carried by the wind, and that because it is lighter than dust, dust is a good marker to show the minimum distance asbestos fibers would have traveled. They then considered testimony by the Plaintiffs and other neighbors about how the demolition activities created dust that blew onto their properties. Based on their earlier conclusion that asbestos fibers had become airborne at the site and were included in the debris, Mr. Rechtin and Mr. Giddens opined that those fibers would have traveled at least as far as the demolition dust and would have reached the Plaintiffs' properties. Finally, Mr. Rechtin and Mr. Giddens considered the opinions from Dr. Stepanek, a meteorologist who opined that the wind blew towards the Plaintiffs' homes on many days while asbestos was exposed at the site. Mr. Rechtin and Mr. Giddens believed that opinion corroborated the Plaintiffs' statements about dust blowing towards their homes and supported their conclusion that asbestos fibers would have reached the Plaintiffs' properties.

Johnson Controls moves to exclude these opinions on multiple grounds. It argues, for example, that Mr. Rechtin and Mr. Giddens are not qualified to offer these opinions because they have not conducted air modeling studies or reviewed scientific studies. It also argues that their

opinions are unreliable because they did not perform air sampling at the Plaintiffs' properties, did not calculate the quantity of asbestos fibers to which the Plaintiffs were exposed, and did not employ a suitable methodology.

These arguments attempt to make this testimony more complicated than it needs to be. Not all expert testimony has to be offered by PhDs, entail a review of scientific literature, or employ complex modeling. *See* Fed. R. Evid. 702 (allowing expert testimony based on "scientific, *technical, or other specialized knowledge*"); *Tuf Racing Prods., Inc. v. Am Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) ("The Federal Rules of Evidence . . . do not require that expert witnesses be academics of PhDs, or that their testimony be 'scientific' . . . in character. Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness."). Mr. Rechtin and Mr. Giddens have the practical training and experience necessary to allow them to conduct asbestos inspections and to plan and oversee asbestos abatement. That training and experience produces specialized knowledge about how asbestos can become airborne, how long it can remain airborne, and how far it can travel. That knowledge is necessary to their jobs, as it allows them to take appropriate precautions for their own safety and to ensure that abatement is conducted in a manner that will prevent exposure to asbestos. They are not unqualified because they gained that knowledge in a practical instead of academic or scientific setting, and their opinions are not unreliable just because they did not perform advanced air modeling.

Nor is their opinion based solely on *ipse dixit*, as Johnson Controls contends. Mr. Rechtin and Mr. Giddens explain in their report how they conclude that asbestos became airborne at the site, as they discuss how buildings were demolished with asbestos still inside and without taking the precautions necessary to prevent asbestos from becoming airborne, and they explain how

those activities would have caused asbestos fibers to become airborne. They further explain how they conclude that asbestos reached the Plaintiffs' properties. They note that asbestos is so light that it can remain in the air for days at a time. It is also lighter than dust, meaning that it will likely have travelled at least as far as any dust from the same place. As they explain by analogy, a river is likely to carry a pebble farther downstream than a rock, as a pebble is lighter and more easily carried by the current. And since the Plaintiffs observed dust being created at the site and settling on their properties, Mr. Rechtin and Mr. Giddens concluded that the lighter asbestos fibers would have travelled at least that far.

This analysis adequately grounds their opinions in their expertise and traces that expertise to their conclusions.[1] Johnson Controls is entitled to point to the lack of air modeling or other lines of evidence that might have been used to confirm the presence of asbestos, and to ask the jury not to credit these opinions. But that is a matter of weight, not admissibility. Johnson Controls likewise argues that this analysis is so simple that expert testimony is not even helpful. The Court disagrees. Asbestos' size and characteristics and its capacity to travel in the air are not matters of common knowledge, and these experts apply their knowledge of those topics to the facts of this case in a way that would help the jury understand whether asbestos would have reached the Plaintiffs' properties.

Johnson Controls also argues that the Plaintiffs did not address the factors identified in *Daubert* as potentially bearing on the reliability of scientific testimony, such as whether the method has been peer reviewed or has a known rate of error. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993). Those factors were only "meant to be helpful, not definitive,"

---

[1] This analysis was absent from the report that was excluded at the class-certification stage, which also addressed a different question.

and they do not apply to all types of testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150–51. Given the nature of these experts' analysis and testimony, the Court does not find those factors useful here. *See id.* at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. That is to say, a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony.").

Johnson Controls further argues that Mr. Rechtin and Mr. Giddens failed to calculate the quantity of asbestos that became airborne or reached the Plaintiffs' homes. That argument is not responsive to their opinions, though. They address only the fact of exposure, not the dose. The limited nature of that opinion may affect the scope of the Plaintiffs' claims when it comes to liability or damages, but it does not render their opinion on that limited issue irrelevant or unreliable. The Court therefore denies the motion to exclude Opinions 2 and 3.

Finally, Johnson Controls objected to other aspects of the joint report that stray beyond these witnesses' expertise. The report discusses, for example, the health impacts of asbestos, including the diseases it can cause and the latency periods to develop those diseases. [DE 383-3 p. 6]. The Court agrees that Mr. Rechtin and Mr. Giddens lack the medical expertise to offer those opinions, and the Plaintiffs do not respond to this aspect of Johnson Controls' motion. The Court thus excludes testimony on the medical impacts of asbestos. Johnson Controls also objects that the report includes extended recitations of documents and excerpts of deposition testimony, which were provided by counsel, not the experts. Many of those materials may be hearsay, but the experts' opinions themselves are admissible, and the extent to which any otherwise inadmissible materials can be disclosed through these witnesses can be addressed at a later stage. *See* Fed. R. Evid. 703.

**C.    Kristen Stout**

The Plaintiffs next offer an expert report from Kristen Stout. Ms. Stout has experience in aerial photographic analysis, which she has applied in assessing hazardous waste sites for the Environmental Protection Agency. Though she has experience in photogrammetry—the use of aerial photographs to create maps and generate measurements—her work in this case did not draw on that expertise. Rather, she applied what she called photo analysis, which entailed reviewing pictures and documents to create a timeline of activities at the site. Her report offers a factual narrative of the demolition activities at the site, with recitations of documentary evidence and her observations from various pictures. In her words, Ms. Stout "tells the story" of what activities took place at the site. [DE 383-16 p. 57; *see also id.* p. 40 ("[M]y role was, primarily, to document the demolition activities and how the debris was handled and moved around the site.")].

In moving to exclude this testimony, Johnson Controls primarily contends that the Plaintiffs are simply offering their own factual narrative under the guise of expert testimony. It argues that Ms. Stout did not bring an expertise to bear, but recited documents and other peoples' opinions and offered observations of pictures that a jury would be equally capable of observing for itself. Rule 702 allows expert testimony if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). This does not merely mean that the expert's testimony must be relevant; expert witnesses must bring their expertise to bear in such a way that their expertise helps relate the evidence to the jury in a way that will assist the jury's understanding of the evidence. *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991), *amended on unrelated grounds*, 957 F.2d 301 (7th Cir. 1992) ("An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the

9

opinion must be an *expert* opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert."); *see also Sullivan v. Alcatel-Lucent USA Inc.*, No. 12 C 07528, 2014 WL 3558690, at *5 (N.D. Ill. July 17, 2014); *In re Rezulin Prods. Liability Lit.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004).

Thus, "an expert witness may not simply summarize the out-of-court statements of others as his testimony." *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014) (internal quotation omitted). Likewise, "An expert 'cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.'" *Newman ex rel. Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 9936293, at *6 (N.D. Ill. Mar. 29, 2013) (quoting *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009)). "Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology. Mere narration thus fails to fulfill *Daubert's* most basic requirements." *S.E.C. v. ITT Educ. Servs., Inc.*, 311 F. Supp. 3d 977, 987 (S.D. Ind. 2018).

The Court agrees with Johnson Controls' characterization of Ms. Stout's report as offering only a factual narrative, which is not the realm of expert testimony. The Plaintiffs disagree, arguing that the narrative provides the factual underpinning for her opinions. Yet, they have great difficulty articulating what those opinions are or what expert gloss she offered beyond reciting a narrative or offering observations that would be apparent to a lay person. They even say that her role was to review pictures and documents and "develop a timeline of site activities." [DE 388 p. 26]. As just noted, "constructing a factual narrative based upon record evidence" is not a role for expert testimony—that's a lawyers job through the presentation of evidence and through opening statements and closing arguments. *Newman*, 2013 WL 9936293, at *6; *see also*

*Empire Med. Review Servs., Inc. v. CompuClaim, Inc.*, No. 13-cv-1384, 2018 WL 5823660, at *3 (E.D. Wis. Mar. 16, 2018). Ms. Stout likewise had difficulty identifying what expert opinions she had to offer, as she testified that her opinion was "actually the narrative" in her report. [DE 383-16 p. 36]. Of course, it is possible that an expert could draw on her experience to provide insight that would be helpful in understanding the course of events, *see Newman*, 2013 WL 9936293, at *6, but the Plaintiffs have not shown how Ms. Stout did so here.

An example helps illustrate the point. The following excerpt is representative of much of Ms. Stout's report:

> In February the plaintiffs' environmental consultant, Keramida, Inc., collected debris samples from the debris piles which tested positive for asbestos. (KERA030776) This triggered an EPA Emergency Response Action. EPA's contractors were dispatched to the Site to conduct an inspection and collect additional samples. The inspection and sampling confirmed the presen[ce] of ACM [Asbestos Containing Material] on Site, including friable asbestos. The EPA determined that, "the site is covered with piles of asbestos-containing debris. Some of the asbestos is on the surface and can (and has) become airborne." (EPA Action Memorandum, 2016) The debris piles were covered with plastic tarps to prevent further releases of asbestos dust into the air. A security fence was installed along East Monroe Street and the alleyway to restrict access to the Site, and warning signs were posted. See Figures 10-1, 10-2. (https://response.epa.gov/site/site_profile.aspx?site_id=11449)
>
> In August 2016, EPA initiated a Time-Critical Removal Action to remove approximately 7,000 tons of readily identifiable ACM wastes from debris piles and pits (sub-grade structures) on Site. The Removal Action employed standard safety practices for handling asbestos wastes. In Figure 10-3 a worker in a hazmat suit and wearing a respirator is applying water to the debris pile. The debris piles were kept wet to prevent asbestos dust from becoming airborne while handling and loading the debris into trucks for offsite disposal. Note the plastic sheeting covering the transport truck in Figure 10-4. Figures 10-5 through 10.8 show several of the sub-grade structures after EPA had removed the debris.

[DE 383-4 p. 13–14].

The first paragraph does not include any photographic analysis—the sole area of expertise the Plaintiffs invoke. [DE 388 p. 27]. It offers only a passing citation to two pictures after noting things that are readily apparent from the pictures themselves: that a fence was

11

erected and a warning sign was posted. The rest of discussion in this paragraph merely recites documents without bringing any expertise to bear. The second paragraph references several pictures, but again offers no expertise. It notes, for example, that a worker in Figure 10-3 is wearing a hazmat suit and respirator, but that is apparent to any lay juror from observing the picture.

The only aspect of that discussion drawing on expertise—the statement that debris piles were kept wet to prevent asbestos from becoming airborne—is not a product of Ms. Stout's expertise in photo analysis. Rather, that statement would require expertise in the proper handling and abatement of asbestos. That is the subject of Mr. Rechtin and Mr. Giddens' report, as already discussed, but Ms. Stout is not an expert in that subject. She testified that she has read standards on handling asbestos and previously worked on a project involving asbestos. But having read standards on handling asbestos does not qualify someone as an expert on that topic, *see Bagher v. Auto-Owners Ins. Co.*, No. 1:12-cv-980, 2014 WL 1224453, at *5 (D. Colo. Mar. 25, 2014), and Ms. Stout's role in the previous project was reviewing pictures to determine distances and directions and create demonstrative exhibits. Again, Mr. Rechtin and Mr. Giddens can testify on the proper handling of asbestos, but Ms. Stout is not an expert on that topic, and her narrative of the other evidence is not helpful to the jury.

In other portions of her report, Ms. Stout notes that pictures taken at different times show debris piles in different places, indicating the piles had been moved, or describes how pictures reflect that different buildings were torn down over time. Those may be accurate observations of those pictures, but they do not require expert testimony for a jury to understand. *See Sullivan*, 2014 WL 3558690, at *6 ("Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the

introduction of a proffered expert's testimony." (quotation and alteration omitted)); *Rezulin*, 309 F. Supp. 2d at 551 ("[The expert's testimony] is merely a narrative of the case which a juror is equally capable of constructing. In [the expert's] own words, the purpose of this testimony is simply to 'provide an historical commentary of what happened' . . . . Such material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence."). Other portions of the report recite at length from other documents or other people's statements or opinions without applying any expertise in photo analysis.

As a contrary example, the Plaintiffs point to a statement in Ms. Stout's report where she notes that a picture reflects "heterogeneity of the materials in the debris piles," suggesting the materials had been smashed and mixed together. A jury does not need expert testimony to look at the picture and see that the materials in the debris appear to have been broken up and mixed together, though. The Plaintiffs have not articulated how Ms. Stout drew on her expertise in photo analysis to appreciate anything more than would be apparent to a lay juror, or how she applied a reliable methodology in offering that observation. Again, Mr. Rechtin and Mr. Giddens may be able to address what demolition activities would produce the conditions shown in those pictures and whether those activities would cause asbestos to become airborne, but that is not within Ms. Stout's expertise in photo analysis.

That is not a slight to Ms. Stout or the value of her work. Her assimilation of information into a narrative may have been quite useful to the Plaintiffs' counsel in investigating their case (which she noted was the purpose for which she was originally retained). The problem is that counsel offered her testimony in a capacity that is not a proper subject of expert testimony. Reviewing evidence and drafting a timeline does not qualify a person to testify as an expert witness on the course of events any more than a lawyer becomes qualified to testify as an expert

by drafting a statement of facts. Because the Plaintiffs have not shown that this report goes beyond presenting a narrative or that it draws on expertise that would assist the jury, the Court excludes Ms. Stout's expert testimony.

**D.     Adam Stepanek**

Finally, Johnson Controls moves to exclude the opinions by Adam Stepanek, a meteorologist. Dr. Stepanek was asked to opine on how often the wind blew in the direction of the Plaintiffs' homes from the Johnson Controls site. He examined the wind observations from a nearby airport, which he found to be a suitable proxy for the conditions in the neighborhood. He then averaged the observed wind speeds and directions for each day. He concluded that over the relevant period, the wind blew in the direction of at least one of the Plaintiffs' homes on 415 days.

First, Johnson Controls moves to exclude this testimony on the basis that expert testimony on this topic would not be helpful. Fed. R. Evid. 702(a). The Court disagrees. Dr. Stepanek's expertise is helpful in connecting observations from a nearby observation site (Goshen Municipal Airport) to the conditions in the Plaintiffs' neighborhood, and in interpreting and synthesizing those observations to determine average wind directions during the relevant period. Johnson Controls argues that this wind-direction testimony is unhelpful because it fails to establish that the Plaintiffs were actually exposed to asbestos. That argument misconceives the role of Dr. Stepanek's testimony, though. Dr. Stepanek's testimony is a building-block upon which Mr. Rechtin and Mr. Giddens rely in reaching *their* opinion that asbestos reached the Plaintiffs' properties. Dr. Stepanek opines on the wind direction, and Mr. Rechtin and Mr. Giddens use their expertise on the characteristics of asbestos to opine that wind traveling in that direction would have carried asbestos to the Plaintiffs' properties. Dr. Stepanek's opinion is

narrow, but it is still helpful for that narrow purpose, so that is not a ground for excluding his testimony.

The rest of Johnson Controls' arguments appear directed only to statements Dr. Stepanek made at his deposition, not opinions in his report. Dr. Stepanek opined in his report that "there are days in which the wind direction would have supported the motion of airborne particles from the JCI site toward each of the four specified households." [DE 383-5]. As just noted, his report does not address or offer opinions on asbestos. Johnson Controls argues that he went beyond that opinion during his deposition, though, and opined that the wind would have carried asbestos in particular. [*E.g.*, DE 383-18 p. 132 ("In the event that there were airborne particles *to potentially include asbestos* in the air, on these days, the wind direction would have moved said particles from the JCI site toward one or more of those homes." (emphasis added))].

In context, however, it is apparent that Dr. Stepanek is not offering any opinion specific to asbestos, including whether asbestos was actually in the air, whether its characteristics would cause it to remain in the air, or whether it would have traveled all the way from the site to any Plaintiffs' property. He was merely noting that the wind was blowing in a given direction, and that any particles suspended in the air and being blown by the wind would have been blown in that direction. There's no need to further complicate this opinion; Dr. Stepanek is a meteorologist who opines on wind direction and speed. The Plaintiffs confirm in their response that they only offer Dr. Stepanek's testimony for that narrow purpose, and that they rely on the other experts to connect that testimony to asbestos. Dr. Stepanek's opinions on that narrow topic satisfy Rule 702, so the Court denies the motion to exclude Dr. Stepanek's testimony.

**E.    Conclusion**

Johnson Controls' motion to exclude the expert opinions on asbestos exposure is granted in part and denied in part. [DE 383]. As to Mr. Rechtin and Mr. Giddens, the Court excludes

Opinion 1 and testimony on the medical impact of asbestos, but otherwise denies the motion.

The Court grants the motion to exclude as to Ms. Stout but denies the motion as to Dr. Stepanek.

    SO ORDERED.

    ENTERED: August 21, 2020

                                 /s/ JON E. DEGUILIO
                                 Chief Judge
                                 United States District Court