UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMOS HOSTETLER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 3:15-cv-226 JD |
| | ) |
| JOHNSON CONTROLS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

In this order, the Court addresses the last of the pending *Daubert* motions, in which Johnson Controls moves to exclude a psychiatrist's opinions about three plaintiffs' mental health. The Plaintiffs retained Dr. Zachary Torry to evaluate whether those three plaintiffs suffered a psychiatric injury as a result of being exposed to asbestos and chlorinated chemicals and, if so, whether a reasonable person under similar circumstances would experience a psychiatric injury. To form his opinions, Dr. Torry met with and interviewed each of the three plaintiffs, administrated various tests, and reviewed their treatment records and other materials. Dr. Torry concluded that each plaintiff suffered "extreme emotional distress" because of their alleged exposures and that the distress each plaintiff suffered was reasonable. Johnson Controls moves to exclude those opinions on multiple grounds. The Court concludes, however, that Dr. Torry's opinions satisfy Rule 702, so it denies the motion.

**A.     Standard of Review**

Rule 702 governs the admission of testimony by expert witnesses. Under that rule, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may offer an opinion if the following criteria are met:

>   (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>   (b)   the testimony is based on sufficient facts or data;
>
>   (c)   the testimony is the product of reliable principles and methods; and
>
>   (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

A court has a gatekeeping role to ensure that expert testimony meets these criteria. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834–35 (7th Cir. 2015). The proponent of the expert testimony bears the burden of demonstrating that the testimony meets each of those elements. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019). However, a court does not assess "'the ultimate correctness of the expert's conclusions.'" *Textron*, 807 F.3d at 834 (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). Rather, a court must focus "solely on principles and methodology, not on the conclusions they generate." *Schultz*, 721 F.3d at 432 (quoting *Daubert*, 509 U.S. at 595). "So long as the principles and methodology reflect reliable scientific practice, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

**B.   Analysis**

Johnson Controls offers three lines of argument in support of excluding Dr. Torry's opinions. First, it argues that his opinions lack foundation because he assumed that the Plaintiffs were exposed to asbestos, TCE, PCE. Second, it objects that his reports include factual recitations of underlying facts about the history of the site and the contamination. Third, it argues

that he did not apply a reliable methodology in support of his causation opinions.[1] The Court does not find that any of these arguments warrant excluding Dr. Torry's opinions.

Johnson Controls first argues that Dr. Torry's opinions lack foundation because he simply assumed that the Plaintiffs were exposed to asbestos, TCE, and PCE.[2] This argument mistakes both his role and the nature of his opinions, though. Dr. Torry's role in this case is not to establish whether the Plaintiffs were in fact exposed to any harmful substances—a psychiatrist has no useful expertise to render an opinion on that issue. Instead, the Plaintiffs offer other experts and evidence to prove exposure. If they fail to do so, then a jury may never need to reach Dr. Torry's opinions. But it is entirely appropriate for Dr. Torry to rely on those assumptions and to confine his opinions to his expertise. *See* Fed. R. Evid. 703; *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 807–08 (7th Cir. 2013). Moreover, unlike the health experts' opinions, Dr. Torry's opinions are not based on a physical effect caused by contact with the substances. Rather, he opines that the Plaintiffs' emotional distress was caused by their *belief* that they were exposed to harmful substances. Dr. Torry's opinions evaluate the effects caused by that belief, such as the fear, helplessness, or guilt the Plaintiffs discussed experiencing as a result. Whether or not those exposures occurred is a separate question, but that is outside the scope of Dr. Torry's opinions. His assumption that the Plaintiffs were exposed to the substances is thus not a basis for excluding his opinions.

---

[1] Johnson Controls also argues in its reply brief that Dr. Torry's opinions on the reasonableness of each plaintiff's distress should not be subject to expert testimony in the first place. The Court declines to address that argument since it was raised for the first time in a reply.

[2] Johnson Controls also argues that Dr. Torry was unable to distinguish between harm caused by the asbestos versus the solvents. It offers no reason Dr. Torry needs to make such a distinction, though. This argument may have been premised on the Court granting Johnson Controls' motion to exclude the opinions on asbestos exposure, but the Court denied that motion in part.

Johnson Controls next objects that Dr. Torry's reports include extended recitations of facts related to the history of the site and of the contamination. This information mostly came from counsel or from documents reflecting the Plaintiffs' theory of the case, and some of it was not even known by the Plaintiffs themselves. The Court agrees that it would largely be improper for Dr. Torry to testify to these matters at trial, as an expert cannot be used to serve as a narrator for a party's version of the facts. *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014); *Newman ex rel. Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 9936293, at *6 (N.D. Ill. Mar. 29, 2013) ("An expert 'cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.'"). This issue is better viewed through Rule 703 than 702, though. As already noted, Dr. Torry has no expertise in evaluating the nature or extent of exposure or in drawing factual conclusions about the site's history. The opinions he actually offers focus on the Plaintiffs' mental health, though. In support of those opinions, he relied largely on his discussions with the Plaintiffs about what they perceived and understood about their exposures. To the extent the Plaintiffs wish to elicit testimony about the underlying contamination as relevant to evaluating Dr. Torry's opinions, the parties can address through a motion in limine whether that testimony is admissible under Rule 703. But even if the reports' discussions of the site's history or conditions are just extraneous background, that would not justify excluding Dr. Torry' opinions on emotional distress.

Johnson Controls similarly argues that Dr. Torry's reports obscure the sources of his information, as while the Plaintiffs' emotional distress was caused by the facts *they* perceived, Dr. Torry's reports sometimes include his own impressions of the facts or facts drawn from other sources. The Court does not find that this presents a basis for excluding his opinions, though. Dr. Torry's report identifies the sources of information he considered and the reasons that support his

opinions. Johnson Controls has also had the chance to depose Dr. Torry to further clarify the source of any statements in his report. To the extent Johnson Controls argues that statements that Dr. Torry's reports attribute to the Plaintiffs are not supported by his interview notes, that would be a ground for cross-examination, not excluding his opinions in their entirety. That would likewise be the case to the extent Dr. Torry relied on facts of which the Plaintiffs were not aware. But his reports and testimony sufficiently identify his opinions and the reasons for them so as to allow Johnson Controls to confront and respond to them, so the Court cannot exclude his opinions on that basis.

Finally, Johnson Controls argues that Dr. Torry did not reliably apply a methodology in support of his causation opinions—that the Plaintiffs' exposure was the sole cause of the emotional distress they were suffering. To understand the scope of that objection, it is useful at the outset to discuss Dr. Torry's opinions in some more detail. Dr. Torry's reports first summarize each plaintiff's background and psychiatric history. They then discuss each plaintiff's discussion of their exposure or fear of exposure, the effects that had on them, and how those effects have caused emotional distress. Dr. Torry then discusses his examination of each plaintiff and the results of the psychological assessments he administered. Next, Dr. Torry discusses his diagnoses for each plaintiff. Then, Dr. Torry offers his assessment of the nature and extent of emotional harm suffered by each plaintiff and whether the plaintiff's response was reasonable. Finally, under the heading "Opinion on Causation," Dr. Torry discusses his conclusion that each plaintiff "suffers severe emotional harm that was caused *solely* by her exposure to asbestos and to the chlorinated solvents and the consequences of that exposure." [*E.g.*, DE 397-2 p. 25 (emphasis added)].

Johnson Controls objects only to the last aspect of Dr. Torry's opinions—that the individuals' emotional distress was caused solely by their exposure. Johnson Controls argues that Dr. Torry did not offer a reliable basis for that opinion because he failed to consider and rule out other potential causes of each plaintiff's emotional distress. In particular, it notes that each plaintiff had a prior psychiatric history—a very serious one in some instances—and it argues that Dr. Torry failed to offer a basis for attributing their emotional distress to the alleged exposure instead of those histories and related stressors.

It is first worth clarifying Dr. Torry's causation opinion a bit further, as his phrasing is somewhat ambiguous. As just noted, Dr. Torry opines that each plaintiff suffers severe emotional harm "that was caused solely" by her exposure. He does not opine, though, that the plaintiffs would have no psychiatric conditions at all but for their exposure. For example, Dr. Torry acknowledges that one plaintiff "has a pre-existing mental illness," and he notes that while "her condition is chronic, it is manageable." [DE 397-2 p. 23]. He opines that "she had established a baseline for herself" with that condition, but her perceived exposure "has led to a worsened psychological state and extreme emotional distress" and "diminished her baseline functioning." *Id.* p. 25. In other words, Dr. Torry does not opine that the exposure is the sole cause of their psychiatric diagnoses, but only that it was the sole cause of the distress they were experiencing at that time. [*See* DE 400-3 p. 47 ("So what I'm opining is the symptoms that she was experiencing at the time that I saw her were as a result of the exposure that she experienced."), p. 167 ("So at the time that I saw her, the source of her emotional distress was this imminent -- this fear of imminent harm.")].

Thus framed, the Court believes that Dr. Torry adequately justified his opinions. First, this is not a situation where a plaintiff suffered a discrete injury and an expert attempts to work

6

backward from the injury to identify what caused it. Rather, Dr. Torry discussed with the plaintiffs what they understood and perceived about their exposures and how that affected them, and he traced how those issues impacted their mental health. And notably, the nature of the distress they described was uniquely tied to the exposures as opposed to other causes.

For example, the plaintiffs described experiencing fear and worry about developing serious illnesses in the future as a result of their past exposures. [*E.g.*, DE 397-2 p. 20 ("[S]he has developed a pervasive 'fear and panic' that is centered on the potential for her and her family developing a fatal disease.")]. They also expressed guilt about the risks that their family members may suffer as a result of living with them and being exposed. *E.g.*, *id.* ("[S]he carries an excessive amount of guilt and blames herself, as she believes that she 'put their lives at risk.'"). They also describe feeling helpless since they cannot control whether they or their families may develop illnesses in the future as a result, as well as a sense of vulnerability from being exposed in their own homes. *E.g.*, *id.* at 23 ("Moreover, the uncertainty of when and how the risks will manifest in her or her children elevates her level of fear and worry to such an extent that she is overwhelmed by her helplessness and powerlessness to affect or control the situation."). These are all matters tied directly to the Plaintiffs' beliefs that they were exposed to potentially harmful substances, as opposed to other potential stressors like financial stress. Dr. Torry evaluated the extent of those feelings and their effect on the Plaintiffs' mental conditions in support of his opinions that they suffered emotional distress as a result of their exposures. His reports adequately explain how these particular stressors translated to emotional distress.

In addition, Dr. Torry adequately supported his opinions that the exposures were the sole cause of the emotional distress each plaintiff was experiencing. Again, his opinion in this respect is not that the plaintiffs would have been in perfect mental health but for the exposure, but only

7

that the exposure was the sole cause of the distress they were experiencing at the time. For each plaintiff, Dr. Torry discussed their psychiatric histories but explained why they were not experiencing emotional distress from those conditions or from other triggers at that time. In short, he believed that the other stressors were either no longer present, or that the plaintiffs had learned to cope with them so that they were not causing ongoing distress.[3]

For one plaintiff, for example, Dr. Torry noted that she had a history of depression attributable to several factors, including a difficult upbringing, failed relationships, and difficulties raising her children. He explained, though, that her symptoms "dissipated when the situation causing the stress was resolved or when [she] left the situation to gain a better perspective," and that she had developed coping skills to deal with those previous stressors. [DE 397-2 p. 21; *see also id.* p. 166–67 (noting that other stressors "had a beginning and an end" or that she "has had time to cope and develop coping skills" for other stressors)]. Dr. Torry opined that, despite her psychiatric history, "she had established a baseline for herself with treatment and structure." *Id.* at 25. Dr. Torry summarized this point at his deposition: "At the time that I saw them, their symptoms that they reported, signs that I observed were caused by their exposure. While they had had prior stressors in their life, those stressors had resolved." [DE 400-3 p. 49–50 (noting also that their "current stressors were focused solely on their health and the health of their family as a result of their exposure")].

---

[3] Also, Dr. Torry's opinion that the exposure was the *sole* cause of emotional distress is distinct from and perhaps unnecessary to his opinion that the exposure caused severe emotional distress; the plaintiffs could have suffered severe emotional distress from their exposures even if they also suffered distress from other causes. Thus, excluding Dr. Torry's opinions as to whether the plaintiffs were also suffering distress from other causes would not necessarily result in excluding his opinions that they suffered severe emotional distress from their belief that they had been exposed to harmful substances.

Johnson Controls argues that those explanations are too thin to reflect a reliable application of a reliable methodology. The Court concludes, however, that Dr. Torry at least satisfied Rule 702's threshold. He applied an adequate methodology by speaking with each of the plaintiffs, reviewing their records, and administering assessments, and by explaining the basis for his opinions as to the nature and extent of their distress and the source of that distress. He also considered and explained why other conditions or stressors were not causing the distress they were experiencing at the time, even if not at the level of granularity that Johnson Controls prefers. Johnson Controls can argue to the jury that Dr. Torry should have further considered other records or pieces of evidence, that he should have reached different conclusions, or that his explanations are unconvincing. It can also offer evidence and opinions that contradict his opinions. Those are all matters of weight for the jury to resolve, though. The Court finds that Dr. Torry has adequately explained the basis for his causation opinion, so that opinion satisfies Rule 702.

**C.    Conclusion**

The Court denies the motion to exclude Dr. Torry's opinions. [DE 397].

SO ORDERED.

ENTERED: October 13, 2020

                                              /s/ JON E. DEGUILIO
                                              Chief Judge
                                              United States District Court